## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| **ANNE-MARIE BEDELL and**<br>**SANDRA NELSON,**  )<br>)<br>)   **Plaintiffs,**  )<br>)<br>**v.**  )<br>)<br>)<br>**LONG REEF CONDOMINIUM**  )<br>**HOMEOWNERS ASSOCIATION,**  )<br>)<br>**Defendant.**  )<br>_____)<br>)<br>**LONG REEF CONDOMINIUM**  )<br>**HOMEOWNERS ASSOCIATION,**  )<br>)<br>**Counter-Claimant,**  )<br>)<br>**v.**  )<br>)<br>**ANNE-MARIE BEDELL and**  )<br>**SANDRA NELSON,**  )<br>)<br>**Counter-Defendants.**  )<br>_____) | **Civil Action No. 2011-051** |

**Attorneys:**
**Daryl Barnes, Esq.,**
**Sunshine S. Benoit, Esq.,**
**John J. Merchant, Esq.,**
St. Croix, U.S.V.I.
     *For the Plaintiffs/Counter-Defendants*

**Mia L. Woodward, Esq.,**
**Ellen G. Donovan, Esq.,**
**Douglas L. Capdeville, Esq.,**
St. Croix, U.S.V.I.
     *For the Defendant/Counter-Claimant*

## <u>MEMORANDUM OPINION</u>

**Lewis, Chief Judge**

THIS MATTER is before the Court on Plaintiffs' Motion for Summary Judgment on both their claims under the Fair Housing Act and on Defendant's counterclaims (Dkt. No. 84); Defendant's Response (Dkt. No. 86-1); Defendant's Response as Counterclaimant (Dkt. No. 87); Plaintiffs' Reply (Dkt. No. 89); and Plaintiffs' Reply to Defendant's Counterclaimant Response (Dkt. No. 103). For the reasons that follow, the Court will deny Plaintiffs' Motion.

### I.   BACKGROUND

**A.   Procedural History**

By Complaint filed on May 12, 2011, Plaintiff Anne-Marie Bedell ("Bedell") initiated the instant action against Defendant Long Reef Condominium Home Owner's Association ("Long Reef") alleging that Long Reef violated provisions of the Fair Housing Act ("FHA") (42 U.S.C. § 3604(f)(2)–(3)) in enforcing its pet prohibition against her and refusing to allow her to keep a dog she claimed to be an emotional support animal in her condominium unit. (Dkt. No. 1). On July 18, 2011, Bedell and Sarah Nelson ("Nelson") (collectively "Plaintiffs") filed a First Amended Complaint (Dkt. No. 6), in which Nelson made allegations against Long Reef that were the same or similar to Bedell's allegations. Specifically, Plaintiffs alleged that Long Reef violated their rights under the FHA by enforcing its pet prohibition against them (Count I); committed slander of title by recording liens against, and publishing false allegations about, their property (Count II); intentionally inflicted emotional distress upon them (Count III); and intentionally harmed Bedell's property interest (Count IV). (*Id.* at ¶¶ 59–76). Plaintiffs sought declaratory relief and damages. (*Id.* at 14).

2

Long Reef filed an Answer on October 12, 2011 (Dkt. No. 12), and a First Amended Answer and Counterclaim on October 2, 2012 (Dkt. No. 43), in which it sought an injunction against Plaintiffs housing any animals in their respective units as well as costs and attorney's fees. Plaintiffs filed their Answer to Long Reef's Counterclaim on October 22, 2012. (Dkt. No. 47). In the instant Motion, Plaintiffs argue that there are no genuine issues of material fact with regard to their claims under the FHA and Defendant's counterclaims, and they are therefore entitled to summary judgment. (Dkt. No. 84).

**B.     Factual Background[1]**

Plaintiffs Bedell and Nelson own condominium units in Long Reef. (Dkt. No. 84-1 at ¶¶ 4, 18). In January 2006, Long Reef amended its rules and regulations to prohibit owners from keeping pets in their condominium units. (Dkt. No. 84-5 at 2). Thereafter, both Plaintiffs independently acquired dogs and began keeping them in the units in contravention of the "no pets" policy. (Dkt. No. 84-1 at ¶¶ 7, 21).

In 2009, Johanna Renzi ("Renzi"), President of the Long Reef Board of Directors, sent Plaintiffs separate letters advising them that the Board was aware that they had dogs on the premises; that pets were prohibited; and that the Board would proceed with fines followed by legal action if they did not remove their respective dogs from the premises. (Dkt. No. 84-10 at 2; Dkt. No. 84-21). The letter to Bedell was sent on August 9, 2009, and the letter to Nelson on December 7, 2009. (*Id.*).

---

[1] The Court derived this factual background from assertions in Plaintiffs' Statement of Undisputed Facts (Dkt. No. 84-1) which Defendant did not dispute in its Response (Dkt. No. 86), as well as from various exhibits submitted by the parties.

### 1.     Plaintiff Bedell

Plaintiff Bedell responded to Renzi by letter on August 31, 2009, informing her that Bedell had rescued the dog from the streets and that she and the dog needed each other. (*Id.* at 3). Bedell also suggested modifications to Long Reef's "no pet" policy. (*Id.*). Bedell, who was a member of Long Reef's Board, submitted her "Proposed Revised Pet Rules" to the Board on October 6, 2009. (Dkt. No. 84-11; Dkt. No. 86-8 at 11). The Board voted against implementing Bedell's proposal in December 2009. (Dkt. No. 86-8 at 10–11).

In January 2010, Long Reef fined Bedell for violating the "no pets" policy. (Dkt. No. 84-1 at ¶ 12). Long Reef continued issuing monthly fines against Bedell and, on March 16, 2010, filed an action against her in the Superior Court of the Virgin Islands seeking to enjoin her from living in her condominium unit with her dog. (*Id.* at ¶ 13; Dkt. 84-12).[2]

On June 21, 2010—ten months after Renzi's initial letter regarding Bedell's dog—Bedell's attorney sent Long Reef a letter stating that Bedell had "been diagnosed with a mental impairment which substantially limits one or more of her major life activities, constituting a handicap under the Fair Housing Act," and formally requesting that an accommodation be made so that she could live in her unit with her dog. (Dkt. No. 84-13). Long Reef's attorney responded via letter on July 24, 2010, informing Bedell that, because the dog was a comfort animal and not a trained psychiatric service animal, it did not require special accommodations. (Dkt. No. 84-14).

---

[2] On October 1, 2012, Long Reef moved to amend its Answer in this action by adding a counterclaim against each Plaintiff seeking the same injunctive relief against them. (Dkt. No. 41). In its Motion to Amend, Long Reef explained that it would voluntarily dismiss its actions in the Superior Court upon amending its Answer in this action. (*Id.*). The Magistrate Judge granted Long Reef's Motion, and Long Reef in turn amended its Answer and added counterclaims against Plaintiffs. (Dkt. No. 43).

Bedell's attorney sent a letter in response on July 26, 2010, disputing Long Reef's attorney's legal assertions. (Dkt. No. 84-15).

Plaintiff Bedell alleges that she listed her unit for sale in August 2010. (Dkt. No. 6 at ¶ 27). Long Reef placed a lien on Bedell's condominium unit on December 1, 2010 for "unpaid assessments owing against the Unit." (Dkt. 84-16). At an unspecified time thereafter, Long Reef "voluntarily released" the lien because it allegedly was "placed [against Bedell's] unit[] in error." (Dkt. No. 86 at ¶ 37).

Plaintiff Bedell initiated her action against Long Reef on May 12, 2011. (Dkt. No. 1).

### 2. Plaintiff Nelson

Plaintiff Nelson did not initially respond to Renzi's December 7, 2009 letter regarding her dog. On February 1, 2010, Long Reef issued a fine against Nelson for violating the pet prohibition. (Dkt. No. 84-22). On February 15, 2010, Nelson wrote Long Reef a handwritten note stating that she had chosen not to pay the fine and that "[t]he 'pet' is a necessary companion." (Dkt. No. 84-23). Nelson also moved out of her unit in February, claiming that her move was in response to threats from Long Reef and to avoid a lawsuit. (Dkt. No. 84-1 at ¶ 26). Long Reef continued issuing fines against Nelson in March and April 2010 (Dkt. No. 84-22 at 1–2). Then, in May 2010, Long Reef sued Nelson in the Superior Court of the Virgin Islands, seeking to enjoin her from keeping her dog on the premises. (Dkt. No. 84-24).

Plaintiff Nelson wrote Long Reef a letter on June 3, 2010 referring to her dog as a "service companion." (Dkt. No. 84-26). Nelson wrote Long Reef again on July 16, 2010, stating that her dog was a "service animal," and asking what documentation Long Reef would require to allow her to keep her dog. (Dkt. No. 84-27). Renzi sent Nelson a letter on August 11, 2010 acknowledging receipt of Nelson's July 16 letter as well as an unidentified "attached letter" that

Nelson had sent. (Dkt. No. 84-29). Renzi's letter informed Nelson that "[s]ince Long Reef's rules do not allow pets and [Nelson] continued to reside with [her] dog at Long Reef, fines were imposed followed by legal action." (*Id.*). Renzi reiterated that it was Nelson's responsibility to pay the fines and legal fees. (*Id.*). Additionally, Renzi stated that further correspondence regarding the matter should be through legal channels, and that Nelson would be responsible for Long Reef's legal fees. (*Id.*).

On December 2, 2010, Long Reef recorded a lien against Nelson's condominium in the amount of $1,308.15 for "unpaid assessments owing against the unit." (Dkt. No. 84-30). Long Reef subsequently "voluntarily released" the lien on June 16, 2011 because it allegedly was "placed [against Nelson's] unit[] in error." (Dkt. No. 30 at 3; Dkt. No. 86 at ¶ 37).

In the interim, on June 13, 2011, Plaintiff Nelson advised Long Reef, via a letter from her attorney, of Nelson's alleged mental condition, and formally requested that Long Reef accommodate her by allowing Nelson to keep a pet on the premises as an emotional support animal, in accordance with the FHA. (Dkt. No. 84-31). Nelson joined Bedell in the present action against Long Reef on July 18, 2011. (Dkt. No. 6).

### 3.   Plaintiffs' Alleged Disabilities

Plaintiff Bedell alleges that she was diagnosed with depression by her treating physician, Dr. Frank Bishop, in 1998. (Dkt No. 84-1 at ¶ 5). Bedell claims that as a result of her anxiety and depression she has difficulty interacting with others, living independently, and sleeping. (*Id.* at ¶ 6). Further, she claims to suffer from periods of loneliness. (*Id.*). Bedell claims that the dog calms her, reduces the effects of her impairments, and improves the quality of her life. (*Id.* at ¶ 8).

Long Reef's expert witness, Dr. Olaf Hendricks, conducted a psychiatric evaluation of Bedell on January 10, 2013 and concluded that in his "professional opinion within reasonable medical certainty, . . . [Bedell] [was] not suffering from a psychiatric disorder." (Dkt. No. 86-10 at 4).

Plaintiff Nelson alleges that in the fall of 2009 she witnessed the shooting death of a friend, and that her brother passed away. (Dkt. No. 30 at 2). Nelson claims that she was diagnosed with depression and post-traumatic stress disorder ("PTSD"), and that two mental health professionals advised her that it was "necessary" for her to keep the dog for emotional support. (*Id.* at ¶ 20) Nelson further claims that, as a result of her PTSD, she worries about her safety, which in turn affects her ability to live independently and to interact with other people. (*Id.*). She also claims that she is afflicted with nightmares and is unable to leave her home at times. (*Id.*). According to Nelson, the presence of her dog reduces the effects of her PTSD and depression, thereby improving her quality of life. (*Id.* at 22).

Dr. Hendricks conducted a psychiatric evaluation of Nelson on January 10, 2013 and concluded that her PTSD was in remission. (Dkt. No. 86-11 at 4). He testified at his deposition that he had not seen evidence indicating that Nelson had a clinical disorder. (Dkt. No. 86-9 at 5).

## II.   APPLICABLE LEGAL PRINCIPLES

On a motion for summary judgment, the movant must show that there is "no genuine dispute as to any material fact," such that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To rebut, the non-moving party must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials" to demonstrate that the adverse party has failed to establish that there is no question of fact.  Fed. R. Civ. P. 56(c).

In reviewing the evidence, the Court "must view all of the facts in the light most favorable to the non-moving party" and must give the non-moving party the benefit of every reasonable inference that can be drawn from the record.  *Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citations omitted). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### III.    DISCUSSION

Plaintiffs allege that Long Reef violated their fair housing rights under 42 U.S.C. § 3604. The Third Circuit recognizes three "general types" of claims Plaintiffs may bring under Section 3604: "(1) intentional discrimination claims (also known as disparate treatment claims) and (2) disparate impact claims, both of which arise under § 3604(f)(2), and (3) claims that a defendant refused to make 'reasonable accommodations,' which arise under § 3604(f)(3)(B)." *Cmty. Srvs. v. Wind Gap Mut. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005) (citing *Lapid-Laurel v. Zoning Bd. of Adjustment*, 284 F.3d 442, 448 n.3 (3d Cir. 2001)).  Courts evaluating these FHA claims generally apply the standards used for analogous claims in the employment law context. *Cmty. Srvs.*, 421 F.3d at 170.

Plaintiffs make two specific FHA claims in their First Amended Complaint. First, they fashion a disparate treatment claim under 42 U.S.C. § 3604(f)(2), which makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of

8

[that person's] handicap." Second, Plaintiffs bring a refusal of reasonable accommodations claim under 42 U.S.C. § 3604(f)(3)(B), which makes it unlawful to refuse "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such persons equal opportunity to use and enjoy a dwelling." The Court has jurisdiction to hear these claims under 28 U.S.C.§ 1331 and 42 U.S.C. § 3613(a). *Cmty. Srvs.*, 421 F.3d at 176.

## A.    Disparate Treatment

Plaintiffs present their disparate treatment claim in the First Amended Complaint as follows:

> Long Reef injured Plaintiffs in violation of the FHA by . . . [d]iscriminating in terms, conditions, or privileges of a sale or a dwelling because of a handicap in violation of 42 U.S.C. § 3604(f)(2). . . . Specifically, in enforcing a "no pet" rule, . . . Long Reef has discriminated on the basis of disability in violation of the Fair Housing Act.

(Dkt. No. 6 at ¶ 61, numeral I, III).

The focus of a disparate treatment analysis is whether the defendant treated the plaintiff less favorably than others, and the poor treatment was based on the plaintiff's membership in a protected class. *See Gallagher v. Magner*, 619 F.3d 823, 831 (8th Cir. 2010). To prevail on a disparate treatment claim, a plaintiff must prove that the defendant acted with discriminatory purpose, and such purpose was a "motivating factor" for the challenged action. *Cmty. Srvs.*, 421 F.3d at 176. Plaintiffs have the burden of persuasion at trial on their disparate treatment claim. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."). Accordingly, to prevail on their summary judgment motion with regard to their disparate treatment claim, Plaintiffs must establish that there is no

genuine issue of material fact that Defendant acted with a discriminatory purpose, and that such purpose was a "motivating factor" for enforcing the pet prohibition against Plaintiffs. *See N. Hudson*, 665 F.3d at 475; *Gallagher*, 619 F.3d at 831; *Cmty. Srvs.*, 421 F.3d at 176; *Hankins v. Temple Univ. (Health Sci. Ctr.)*, 829 F.2d 437, 440 (3d Cir. 1987) ("In a discrimination case, our task is to determine whether, upon viewing all of the facts and reasonable inferences drawn therefrom in the light most favorable to the [non-moving party], there exists sufficient evidence to create a genuine issue of material fact as to whether the [defendant] intentionally discriminated against the plaintiff.").

Although not appearing to make a focused disparate treatment argument, Plaintiffs assert in their Motion for Summary Judgment that Defendant failed to take legal action against several tenants and owners who violated the pet prohibition; that the amendments to the rules and regulations which added the pet prohibition recognized several cats living on the property; and that two dogs were "grandfathered" in, and thus allowed to remain on the property. (Dkt. No. 6 at ¶¶ 16–18).[3] Notwithstanding these assertions, Plaintiffs cannot establish the absence of genuine issues of material fact.

The disputed facts here are not dispelled by the assertion that, over three years before Plaintiffs acquired their dogs, Defendant allowed an unspecified number of cats—that were living on the premises before the no pet policy came in to existence—to remain living in some units. Nor do the issues of material fact disappear because, over two years before Plaintiffs acquired their dogs, Defendant made a decision to "grandfather" in two dogs. Indeed, the

---

[3] The Court notes that despite making a disparate treatment claim in their First Amended Complaint, Plaintiffs give this claim virtually no treatment in their Motion for Summary Judgment. Instead, Plaintiffs use the allegations above to support aspects of their reasonable accommodation claim.

existence of disputed factual issues with regard to Defendant's enforcement of the no pet policy

is confirmed by Defendant's interrogatory response, which states in pertinent part:

> The undersigned is aware of the following enforcement of Long Reef's "No Pets Rule" in recent years: It was discovered that the tenant in Unit #23, which was owned by Mary Gustafson, was keeping a dog on the property in violation of the rules. The Board informed Ms. Gustafson of this, and the tenant was evicted. Similarly, it was discovered that the tenants in Units #35 and #36 had dogs, and upon being informed of the "No Pets Rule," those tenants vacated the property. Moreover, it was discovered that the tenant in the unit owned by Walt Julio in unit #64 had a dog. Mr. Julio was informed of this and he was fined and warned of possible legal action as per the rules. The tenant vacated. Finally, in 2011, a dog was discovered by Long Reef's manager, Travis Holloway, in Unit #15. Mr. Holloway reported the violation to the owner and property management company managing the unit on behalf of the owner. The owner of the unit ultimately filed an eviction action against the tenant in the Superior Court of the Virgin Islands for failure to pay rent and for several other violations, including having a dog. Long Reef's manager provided information regarding the violation of the "No Pets Rule" before the eviction proceeding. The Court issued an Order requiring the tenant to remove all violations of Long Reef's rules, including his pet. Last year, it was discovered that tenants in Unit #1 had a dog. Mr. Holloway reported [sic] violation to [sic] Property Management Company and tenants vacated the unit.

(Dkt. No. 86-2 at 3).

Simply stated, Plaintiffs' allegations and the record before the Court—viewed in the light

most favorable to Defendant—do not establish the absence of genuine issues of material fact on

the issue of discriminatory intent. *Matsushita*, 475 U.S. at 587; 10A Charles Alan Wright &

Arthur R. Miller, *Federal Practice and Procedure* § 2725 at 433–37 (3d ed. 1998) ("[I]f the

evidence presented on the motion is subject to conflicting interpretations, or reasonable people

might differ as to its significance, summary judgment is improper."). Accordingly, because

Plaintiffs have not met their burden of establishing that there is no genuine issue of material fact

with regard to an essential element of their disparate treatment claim, Plaintiffs are not entitled to

judgment as a matter of law and the Court will deny their Motion for Summary Judgment as to

this claim.

**B.      Reasonable Accommodation**

Plaintiffs claim that Long Reef violated their rights under 42 U.S.C. § 3604(f)(3) in failing to make a reasonable accommodation. (Dkt. No. 6 at ¶ 60). The Third Circuit has not provided a clear standard for reasonable accommodation claims under the FHA. Lacking precedent on the issue, district courts in the Third Circuit have borrowed from the standard for an FHA reasonable accommodation claim adopted in other circuits. *See, e.g.*, *Bell v. Tower Mgmt. Serv., L.P.*, 2008 U.S. Dist. LEXIS 53514, at *8 (D.N.J. July 15, 2008); *Milan v. Pyros*, 2008 U.S. Dist. LEXIS 37299, at *21–22 (W.D. Pa. May 5, 2008); *United States v. Port Liberte 1 Condo Ass'n*, 2006 U.S. Dist. LEXIS 70573, at *13 (D.N.J. Sept. 20, 2006) (citing *United States v. Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997)). The essential elements are:

> (1) the plaintiff is suffering from a disability as defined under the FHA;
> (2) the defendant knew or reasonably should have been expected to know of the alleged disability and requested accommodation;
> (3) the requested accommodation is reasonable and necessary to afford plaintiff an equal opportunity to use and enjoy his dwelling; and
> (4) the defendant refused to make a reasonable accommodation.

*See Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 621 (6th Cir. 2011); *Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev.*, 620 F.3d 62, 67 (1st Cir. 2010); *Dubois v. Ass'n of Apt. Owners*, 453 F.3d 1175, 1179 (9th Cir. 2006); *Bell.*, 2008 U.S. Dist. LEXIS 53514, at *8; *Milan*, 2008 U.S. Dist. LEXIS 37299, at *21–22; *Port Liberte*, 2006 U.S. Dist. LEXIS 70573, at *13 (citing *Cal. Mobile Home*, 107 F.3d at 1380).

The Court will apply this standard to evaluate Plaintiffs' reasonable accommodation claims.[4] Summary judgment is appropriate only if Plaintiffs can present uncontroverted facts for each of the four elements. *Myers v. Condos. Of Edelweiss, Inc.*, 2013 U.S. Dist. LEXIS 123413, at *15 (N.D. Ill. Aug. 29, 2013). Plaintiffs have failed to do so and, therefore, summary judgment on their reasonable accommodation claim must be denied.

### 1.  Plaintiffs' Alleged Disabilities

With regard to the first element, Plaintiffs argue that there is no genuine issue of material fact that Plaintiffs are disabled within the meaning of the FHA. (Dkt. No. 89 at 3–5, 6–7). Bedell claims to suffer from depression and alcoholism. (*Id.* at 3). Nelson claims to suffer from depression and PTSD. (*Id.* at 5).

The FHA defines "handicap" as "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. § 3602(h). "[T]o establish a statutorily protected disability, the [plaintiff] must show that she has an impairment; identify the life activity that she claims is limited by the impairment; and prove that the limitation is substantial." *Fiscus v. Wal-Mart Stores, Inc.*, 385 F.3d 378, 382 (3d Cir. 2004) (citing *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998)). The determination of "whether a plaintiff's impairment substantially limits a major life activity," and thus whether the plaintiff is disabled, is made on a case-by-case basis. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (citing *Albertson's, Inc. v. Kirkinburg*, 527 U.S. 555, 566 (1999)).

---

[4]  The Third Circuit has addressed the first element of the standard—the existence of the disability—in the employment law context. The Court will rely on this precedent. *Cmty. Srvs.*, 421 F.3d at 170 (stating that courts evaluating FHA claims generally apply the standards used for analogous claims in employment law).

The first step in assessing a disability is "identifying the specific life activity or life activities that [the plaintiff] says her disorder affect[s] and then evaluat[ing] whether her condition 'substantially limits' those life activities." *Taylor*, 184 F.3d at 306–07. "'[S]ubstantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree,' but a plaintiff need not prove that she suffers from "'utter inabilities.'" *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502 (3d Cir. 2010) (citing *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 197 (2002), and *Albertson's*, 527 U.S. at 567). A major life activity is one that is "of central importance to daily life," *Toyota Motor Mfg.*, 534 U.S. at 197, "'such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working,' as well as 'sitting, standing, lifting [and] reaching.'" *Kralik v. Durbin*, 130 F.3d 76, 78–79 (3d Cir. 1997) (quoting 29 C.F.R. §§ 1630.2(i), 1630 app.) (alteration in original).

In response to Plaintiff's contention that there is no genuine issue of material fact as to their respective disabilities, Long Reef offers the deposition testimony of its expert witness, Dr. Olaf Hendricks (Dkt. No. 86-9), as well as his reports from his psychiatric evaluations of Bedell and Nelson. (Dkt. Nos. 86-10, 86-11). The Court will address each Plaintiff's disability claims in turn.

### a. Plaintiff Bedell

Dr. Hendricks stated as follows in his deposition:

> The first part, whether she has a psychiatric condition which prevented her from being able to engage major life activities, no, she does not have a psychiatric condition which prevents her or prevented her from being able to engage in major life activities.

(Dkt. No. 86-9 at 3).

In his psychiatric evaluation of Bedell, Dr. Hendricks found that Bedell was "able to take care of all her daily activities and engage in major life activities" and that "[s]he has continued to enjoy a normal life and is independent in all aspects of her life even with a chronic obstructive pulmonary disorder." (Dkt. No. 86-10 at 4). With regard to her claim of depression, Dr. Hendricks found that Bedell's "euthymic mood and absence of criteria for depression according to the DSM IV TR, rules out a diagnosis of depression." (*Id.*). He ultimately concluded: "It is therefore my professional opinion within reasonable medical certainty, that the evaluee is not suffering from a psychiatric disorder." (*Id.*).

Plaintiffs respond with three arguments as to why the Court should find there is no genuine issue of material fact that Bedell is disabled, notwithstanding Dr. Hendricks' evaluation and testimony. (Dkt. No. 89). First, Plaintiffs argue that "the 'fact that [Ms. Bedell] was capable of working and was sometimes able to function well at home does not mean that her disabilities did not interfere with the use and enjoyment of her home.'" (Dkt. No. 89 at 3) (alteration in original) (quoting *Auburn Woods I Homewoners Ass'n v. Fair Emp't & Hous. Comm'n.*, 121 Cal.App.4th 1578, 1595 (3d Dist. 2004).[5] While Plaintiffs' assertion may be correct, *see Taylor*, 184 F.3d at 310–11, it does not establish that there is no genuine issue of material fact as to whether a qualifying disability exists. Indeed, to prove that Bedell is disabled under the FHA, she must prove that her alleged disability "substantially limits one or more of [her] major life activities." 42 U.S.C. § 3602(h)(1); *see also Taylor*, 184 F.3d at 306 ("No one disputes that bipolar disorder counts as a mental impairment under the ADA [which applies the same standard

---

[5] Inherent in Plaintiffs' own statement of their argument is an indication of precisely the type of varying possible interpretations of evidence that precludes summary judgment. 10A Wright & Miller, *Federal Practice and Procedure* § 2725 at 433–37.

as the FHA for the existence of a disability]; the contested issue is whether Taylor's bipolar disorder substantially limits a major life activity."). Therefore, Dr. Hendricks' conclusions as to Bedell's abilities are enough to put the existence of Bedell's disability—within the meaning of the FHA—at issue and, thus, preclude a finding of summary judgment for Bedell. *Cf. Taylor*, 184 F.3d at 306 (holding that summary judgment for the defendant would be inappropriate on the issue of the existence of a disability under the ADA where the plaintiff "raise[d] genuine factual disputes about whether her bipolar disorder substantially limit[ed] a major life activity.").

Plaintiffs further argue that while Dr. Hendricks concluded that Bedell did not suffer from a "psychiatric disorder," the FHA defines disability as having a "physical or mental impairment." (Dkt. No. 89 at 4). Although Plaintiffs are correct with regard to the wording used in the FHA, the Court must give Long Reef the benefit of all reasonable inferences that can be drawn from the facts in the record. *Reedy*, 615 F.3d at 210. One could reasonably infer that the terms "psychiatric disorder" or "psychiatric condition" and "mental impairment" are equivalents—or intended to be so construed—and, accordingly, the Court must draw this inference. *Id.* Further, as noted above, Dr. Hendricks' conclusion that Bedell "does not have a psychiatric condition [or disorder] which prevents her or prevented her from being able to engage in major life activities" (Dkt. No. 86-9 at 3), is sufficient to create a genuine issue of material fact as to Bedell's disability, because even a recognized disability does not qualify under the FHA unless it substantially limits a major life activity. 42 U.S.C. § 3602(h).

Finally, Plaintiffs argue that Dr. Hendricks failed to refute their assertion that "Bedell has a documented history of alcoholism, a known impairment under the FHA, which her emotional

support animal alleviates." (Dkt. No. 89 at 4–5).[6] In his report, Dr. Hendricks acknowledged an awareness of Bedell's "consistently high" alcohol consumption (Dkt. No. 86-10 at 4); that she drinks a bottle of wine on an uneventful day (*Id.* at 3); and that "her drinking increased ever since she moved to St. Croix and she attended AA meetings for a while and had been told that she drank too much." (*Id.*). Again, the Court must afford Long Reef the benefit of all reasonable inferences. *Reedy*, 615 F.3d at 210. Thus, given that Dr. Hendricks repeatedly discussed Bedell's alcohol intake, and found that Bedell "does not have a psychiatric condition which prevents her or prevented her from being able to engage in major life activities" (Dkt. No. 86-9 at 3), Dr. Hendricks' conclusion creates a triable issue of fact with regard to whether Bedell's alleged alcoholism constitutes a disability within the meaning of the FHA.

Accordingly, the Court rejects Plaintiffs' arguments that Long Reef has not presented enough evidence to demonstrate a genuine issue of material fact with regard to the existence of Bedell's disabilities under the FHA.

### b.  Plaintiff Nelson

With regard to Plaintiff Nelson, Dr. Hendricks stated in his deposition:

---

[6] The United States Department of Justice and the United States Department of Housing and Urban Development, which are charged with enforcing the FHA, (42 U.S.C. §§ 3614a, 3612(a) & (o)), produced a "Joint Statement . . . on Reasonable Accommodations Under the Fair Housing Act" ("Joint Statement") in May 2004, providing their policy perspectives. According to the Joint Statement's interpretation of Section 3602(h), "[t]he term 'physical or mental impairment' includes . . . emotional illness . . . [and] alcoholism." Joint Statement at 3; *but see Thimons v. PNC Bank*, *N.A.*, 254 F. App'x 896, 899 n.2 (3d Cir. 2007) (declining to decide whether alcoholism is a disability under the ADA in the employment context). The Joint Statement serves as a policy statement, not a binding interpretation of the FHA. *See Overlook Mut.*, 415 F. App'x at 621 n.3 (citing *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)). Although not binding on the Court, the Joint Statement has persuasive value. *See id.* (quoting *Christensen*, 529 U.S. at 587).

I am sorry to say, that I don't have any solid evidence that this lady has had a clinical disorder as is contained in the DSM-IV-TR. Not saying that this lady did not go through a lot. She went through hell, but going through hell and having a . . . . reliably determined clinical disorder are two different things.

. . . .

[I]f Ms. Nelson were at any point during that to have had one of these clinical disorders, frankly speaking, it still does not mean that she is, one, disabled or, two, unable to carry out the daily activities of living or major activities of living life.

(Dkt. No. 86-9 at 4–5). In his psychiatric evaluation, Dr. Hendricks concluded that

Nelson' PTSD was in remission, and made the following findings:

By history, she experienced the symptoms of a post-traumatic stress disorder after a fellow musician was shot to death while next to her in August, 2009. She was also described as having severe depression—both by her friend, a family counselor. She did take Xanax, a benzodiazepine, for about one year (August 2010–August 2011) and stopped it because she did not want to be taking pills.

Since approximately August of 2011, she has not been on any depression medication and has been using meditation and music to help her emotionally.

At the time of my evaluation, she manifested no signs of a post-traumatic stress disorder and in fact, her only positive symptoms were tearfulness and insomnia. Interestingly, one of the causes of insomnia is caffeine, which she uses moderately, but daily. On the other hand, Ms. Nelson is still upset experiencing crying spells and anger over her not living in her own condominium unit. That, in my professional opinion, is the proximate cause of her current emotional state.

(Dkt. No. 86-11 at 4–5).

Plaintiffs argue in their Reply that Dr. Hendricks' report is "void of any opinion as to whether Ms. Nelson suffers from a psychological condition, despite his report of her tearfulness, sad appearance, and insomnia." (Dkt. No. 89). However, Plaintiffs disregard Dr. Hendricks' deposition testimony, quoted above, in which he stated that he had not seen evidence of Nelson having a clinical disorder; that although she "went through hell," that did not necessarily indicate that she had a "reliably determined clinical disorder"; and that, even if she did at some point have

18

one of her alleged clinical disorders, she was not necessarily disabled or incapable of performing normal daily activities. (Dkt. No. 86-9 at 5). Thus, there is an issue of fact as to whether Nelson suffers from a disability under the FHA. *Matsushita*, 475 U.S. at 587.

Plaintiffs further argue that because Dr. Hendricks testified that he could not opine to a reasonable degree of medical certainty that Nelson never suffered from PTSD or that she will not suffer from it again in the future, "Defendant . . . can offer no evidence that Ms. Nelson did not, or will not, in the future, suffer from PTSD." (Dkt. No. 89 at 6). In so arguing, Plaintiffs assert that "[a]t [his] deposition, Dr. Hendricks admitted that he could not disprove that Ms. Nelson suffered from PTSD." (*Id.*). However, in opposing summary judgment, Long Reef does not have the burden of *disproving* that Nelson suffered from PTSD, or even "opin[ing] to a reasonable degree of certainty" that she never did, or will not in the future. (*Id.*). Rather, Long Reef need only present enough evidence to create a triable issue of fact as to whether Nelson is disabled within the meaning of the FHA. *N.A.A.C.P. v. N. Hudson Regional Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (citing *Celotex*, 477 U.S. at 323). As discussed above, Long Reef has done so here.

Accordingly, the Court finds that Long Reef has presented enough evidence to establish a genuine issue of material fact with regard to the existence of Nelson's disability under the FHA.

### 2. The Reasonableness and Necessity of the Requested Accommodation in Affording Plaintiffs an Equal Opportunity to Use and Enjoy Their Units

Plaintiffs make the blanket assertion that their "request for accommodation of the 'no animals rule is reasonable on its face because it can be achieved at no cost to Long Reef." (Dkt. No. 84 at 11). Long Reef counters that "[r]easonableness is a prima facie element that must be proven—Plaintiffs cannot bypass this requirement by simply proclaiming their requested relief is

'reasonable on its face.'" (Dkt. No. 86-1 at 11). Long Reef continues, "absent statutory or judicial mandate (neither of which is cited by Plaintiffs), the concept of 'reasonableness' is unquestionably an issue of fact." (*Id.*). In their Reply, Plaintiffs cite a litany of cases for the proposition that "an emotional support animal *may be* a reasonable accommodation under the FHA when the animal is necessary for a disabled person to enjoy equal housing rights." (Dkt. No. 89 at 9) (emphasis added) (citations omitted). Because the Court concludes that both the issues of reasonableness and necessity present disputed issues of fact, summary judgment is inappropriate.

To begin, Plaintiffs' assertion, as stated, demonstrates that there is an issue of material fact, as courts hold that an emotional support animal *may be* a reasonable accommodation, *Falin v. Condo. Ass'n of La Mer Estates*, 2012 U.S. Dist. LEXIS 73453, at *7 (S.D. Fla. May 28, 2012) (citations omitted), not that an emotional support animal *is* a reasonable accommodation as a matter of law. *See* 10A Wright & Miller, *Federal Practice and Procedure* § 2725 at 433–37. The issue of "[w]hether an accommodation is 'reasonable' is a question of fact, determined by a close examination of the particular circumstances." *Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891, 895 (7th Cir. 1996) (citing *United States v. Cal. Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1418 (9th Cir. 1994)). Thus, contrary to Plaintiffs' suggestion, the issue of cost to Long Reef is not the sole basis—as a matter of law—upon which the reasonableness determination should be made.

Moreover, a reasonable accommodation claim requires that a requested accommodation be not only "reasonable," but also "necessary." *Overlook Mut.*, 415 F. App'x at 621. Given that the Court has found genuine issues of material fact with regard to the existence of Plaintiffs'

alleged disabilities within the meaning of the FHA, there also exists genuine issues of material fact as to the necessity of their accommodation requests.

Accordingly, the Court finds that there are material issues of fact with regard to whether Plaintiffs' requested accommodation is reasonable and necessary.

Because the Court finds that material issues of fact exist with regard to the existence of the alleged disabilities of Plaintiffs Bedell and Nelson as well as the reasonableness and necessity of their requested accommodations, the Court will deny Plaintiffs' Motion for Summary Judgment with regard to their reasonable accommodation claims.[7]

## C.      Defendant's Counterclaims

Defendant's counterclaims seeking injunctive relief from Plaintiffs are based on the same disputed facts that form the basis for Plaintiffs' claims against Defendant. Accordingly, for the reasons stated above, the Court will deny Plaintiffs' Motion for Summary Judgment as to Defendant's counterclaims.

---

[7] Summary judgment is appropriate only if Plaintiffs can establish the absence of any genuine issue of material fact with regard to each of the elements of their FHA reasonable accommodation claims. *Myers*, 2013 U.S. Dist. LEXIS 123413, at *15. Having determined that genuine issues of material fact exist regarding two of the four elements, the Court need not address the remaining elements.

## IV.   CONCLUSION

The Court finds that there are material issues of fact that preclude the entry of summary judgment for Plaintiffs on their FHA claims and on Defendant's counterclaims. Accordingly, Plaintiffs' Motion for Summary Judgment (Dkt. No. 84) is denied. An appropriate Order accompanies this Memorandum Opinion.

Date: December 6, 2013

_____/s/_____
WILMA A. LEWIS
Chief Judge