## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| ANNE-MARIE BEDELL and<br>SANDRA NELSON, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>)<br>) | |
| LONG REEF CONDOMINIUM<br>HOMEOWNERS ASSOCIATION, | )<br>)<br>) | Civil Action No. 2011-051 |
| Defendant.<br>_____ | )<br>) | |
| LONG REEF CONDOMINIUM<br>HOMEOWNERS ASSOCIATION, | )<br>)<br>) | |
| Counter-Claimant, | )<br>) | |
| v. | )<br>)<br>) | |
| ANNE-MARIE BEDELL and<br>SANDRA NELSON, | )<br>)<br>) | |
| Counter-Defendants.<br>_____ | )<br>) | |

**Attorneys:**
**Britain Bryant, Esq.,**
**Sunshine S. Benoit, Esq.,**
St. Croix, U.S.V.I.
    *For the Plaintiffs/Counter-Defendants*

**Douglas L. Capdeville, Esq.,**
**Mia L. Woodard, Esq.,**
**Ellen G. Donovan, Esq.,**
St. Croix, U.S.V.I.
    *For the Defendant/Counter-Claimant*

**MEMORANDUM OPINION**

**Lewis, Chief Judge**

THIS MATTER is before the Court on Plaintiffs' "Motion *in Limine* to Limit the Testimony of Dr. Hendricks" (Dkt. No. 85) and Defendant's "Motion *in Limine* to Limit the Testimony of Plaintiffs' Treating Physicians" (Dkt. No. 115). The Court heard oral arguments from the parties regarding these Motions at the pretrial conference in this matter on February 27, 2014.[1] For the reasons that follow, the Court will deny both Motions.

## I. BACKGROUND

Plaintiffs Anne-Marie Bedell and Sarah Nelson allege in their First Amended Complaint that Defendant Long Reef Condominium Home Owner's Association violated provisions of the Fair Housing Act ("FHA") (42 U.S.C. § 3604(f)(2)–(3)) by enforcing its pet prohibition against them and refusing to allow them to keep dogs they claim to be emotional support animals in their condominium units. (Dkt. No. 6).

Plaintiff Bedell alleges in the First Amended Complaint that she was diagnosed with depression by her treating physician, Dr. Frank Bishop, in 1998. (Dkt No. 84-1 at ¶ 5). Bedell claims that as a result of her anxiety and depression she has difficulty interacting with others, living independently, and sleeping. (*Id.* at ¶ 6). Further, she claims to suffer from periods of loneliness. (*Id.*). Bedell claims that the dog calms her, reduces the effects of her impairments, and improves the quality of her life. (*Id.* at ¶ 8).

---

[1] The trial in this matter was scheduled to commence on March 10, 2014. Because of Plaintiff Bedell's sudden illness, Plaintiffs filed an "Emergency Motion to Continue Trial" (Dkt. No. 144) on March 3, 2014, which was granted by the Court (Dkt. No. 148). As of March 10, 2014, Plaintiff Bedell's medical status remained uncertain. (Dkt. No. 156).

Plaintiff Nelson alleges that in the fall of 2009 she witnessed the shooting death of a friend, and that her brother passed away. (Dkt. No. 30 at 2). Nelson claims that she was diagnosed with depression and post-traumatic stress disorder ("PTSD"), and that two mental health professionals advised her that it was "necessary" for her to keep the dog for emotional support. (*Id.* at ¶ 20). Nelson further claims that, as a result of her PTSD, she worries about her safety, which in turn affects her ability to live independently and to interact with other people. (*Id.*). She also alleges that she is afflicted with nightmares and is unable to leave her home at times. (*Id.*). According to Nelson, the presence of her dog reduces the effects of her PTSD and depression, thereby improving her quality of life. (*Id.* at 22).

Plaintiffs provided summaries of their treating physicians' expected testimony to Defendant on December 28, 2012. (Dkt. No. 115-3). Defendant's expert witness, Dr. Olaf Hendricks, conducted psychiatric evaluation of the Plaintiffs on January 10, 2013, and produced a report on each Plaintiff on January 31, 2013. (Dkt. Nos. 85-1, 85-2). Plaintiffs' three treating physicians, including Dr. Bishop, were deposed on February 12 and February 13, 2013. (Dkt. Nos. 92-12, 92-13, 139-3). During Dr. Bishop's deposition, he made several references to Plaintiff Bedell's alleged alcohol use. (Dkt. No. 139-3 at 3–6, 8, 11, 14–15, 17).

No deposition was scheduled for Defendant's expert, Dr. Hendricks, because Plaintiffs advised Defendant that they did not intend to depose him. (Dkt. No. 80 at 1). However, Defendant stated that after completing the depositions of Plaintiffs' treating physicians, it identified the need to depose Dr. Hendricks to respond to "information regarding the qualifications and methodologies (if any) used to arrive at the ultimate opinions of Plaintiffs' treating physicians." (Dkt. No. 76 at 5). Accordingly, Defendant filed an "Emergency Motion to

Extend Expert Discovery Deadline" (Dkt. No. 76), which the Court granted (Dkt. No. 80). Dr. Hendricks was deposed on March 20, 2013. (Dkt. No. 86-9).

In Plaintiffs' Motion *in Limine*, they argue that Dr. Hendricks should be precluded from opining at trial with regard to Plaintiff Nelson's need for an emotional support animal.[2] In Defendant's Motion *in Limine*, it argues that Plaintiff Bedell's treating physician, Dr. Bishop, should be precluded from opining at trial that Plaintiff Bedell's alleged alcoholism constitutes a disability under the FHA.[3]

## II. APPLICABLE LEGAL PRINCIPLES

Federal Rules of Civil Procedure 26(a)(2)(A)-(B) state, in pertinent part:

(A) [A] party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

---

[2] In their Motion, Plaintiffs further argued that Dr. Hendricks should be precluded from opining at trial with regard to Plaintiff Bedell's need for an emotional support animal. (Dkt. Nos. 85, 92). However, Plaintiffs withdrew this argument at the pretrial conference. Plaintiffs further argued in their Motion that Dr. Hendricks should be precluded from testifying with regard to the physical condition of alcoholism because he did not offer an opinion in his report as to this issue, and he is not qualified as a psychiatrist to opine on physical conditions. (Dkt. Nos. 85, 92). Plaintiffs' counsel conceded at the pretrial conference that Plaintiffs are not arguing that Bedell's alleged alcoholism is a physical condition; thus, Plaintiffs withdrew these arguments as well.

[3] In its Motion, Defendant consistently argued that it sought to preclude Dr. Bishop from testifying with regard to Plaintiff Bedell's "alleged 'physical condition' of alcoholism." (Dkt. No. 139). At the pretrial conference, Defendant clarified that it has two alternative positions. The first is that Dr. Bishop should be precluded from testifying that Bedell's alleged alcoholism constitutes a disability, in and of itself, under the FHA. Defendant distinguishes this argument from one to which it does not object—that alcoholism is a coping mechanism resulting from Plaintiff Bedell's alleged disability of depression. Alternatively, Defendant argues that if Dr. Bishop is permitted to testify that Bedell's alleged alcoholism is a disability, her alleged alcoholism should be considered a mental condition, as opposed to a physical condition. Because Plaintiffs withdrew their argument that Bedell's alleged alcoholism is a physical condition, the only question before the Court is whether Dr. Bishop is precluded from opining at trial that Bedell's alleged alcoholism constitutes a disability under the FHA.

> (B) . . . this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
>
> (i) a complete statement of all opinions the witness will express and the basis and reasons for them.

Fed. R. Civ. P. 26(a)(2)(A)-(B).

Treating physicians or other health care professionals generally may testify as fact witnesses without providing an expert report when "testifying 'based on their examination, diagnosis and treatment of a patient.'" *Pease v. Lycoming Engines*, 2012 U.S. Dist. LEXIS 6354, at *41–42 (M.D. Pa. Jan. 19, 2012) (quoting *Mracek v. Bryn Mawr Hosp.*, 610 F. Supp. 2d 401, 406 (E.D. Pa. 2009)). However, "[p]arties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C)." Fed. R. Civ. P. 26 advisory notes (2010). The disclosure required under Rule 26(a)(2)(C) "must state: (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

Although a Rule 26(a)(2)(B) written report must contain more extensive information than a the Rule 26(a)(2)(C) summary, "the two forms of disclosure share the goal of increasing efficiency and reducing unfair surprise." *Brown v. Providence Med. Ctr.*, 2011 U.S. Dist. LEXIS 111098, at *3 (D. Neb. Sept. 27, 2011) (citation and internal quotation marks omitted); *accord Robinson v. HD Supply, Inc.*, 2013 U.S. Dist. LEXIS 101690 (E.D. Ca. July 19, 2013); *Moshi v. State Farm Mut. Auto. Ins. Co.*, 2013 U.S. Dist. LEXIS 76917 (D. Nev. May 30, 2013).

Federal Rule of Civil Procedure 37(c)(1) states that: "If a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use

that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). To determine whether a discovery violation is "substantially justified," courts in the Third Circuit consider several factors, sometimes referred to as the *Pennypack* factors:

> (1) "the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified" or the excluded evidence would have been offered; (2) "the ability of that party to cure the prejudice"; (3) the extent to which allowing such witnesses or evidence would "disrupt the orderly and efficient trial of the case or of other cases in the court"; (4) any "bad faith or willfulness in failing to comply with the court's order"; and (5) the importance of the excluded evidence.

*ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012) (citing *Myers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977)).

### III.   DISCUSSION

Plaintiffs contend that Dr. Hendricks should be precluded from testifying with regard to whether Plaintiff Nelson needs an emotional support animal because his report did not offer an opinion as to whether she did or did not require an emotional support animal. Defendant argues that Plaintiff Bedell's treating physician, Dr. Bishop, should be precluded from opining at trial that Bedell's alleged alcoholism constitutes a disability under the FHA because Plaintiffs failed to plead such a theory in their First Amended Complaint, or to timely disclose it in discovery. The Court will address the parties' arguments in turn.

### A.   Dr. Hendricks' Testimony

Plaintiffs argue that if Dr. Hendricks were permitted to opine at trial that Plaintiff Nelson does not need an emotional support animal, his testimony would violate Federal Rule of Civil Procedure 26(a)(2)(B), which requires an expert report to contain "a complete statement of all opinions the witnesses will express and the basis and reasons for them." (Dkt. No. 85 at 4)

(quoting Fed. R. Civ. P. 26(a)(2)(B)(i)). According to Plaintiffs, Dr. Hendricks' report "is void of any opinion[]" regarding whether Plaintiff Nelson requires an emotional support animal. (*Id.*). The Court disagrees.

One of Plaintiffs' FHA claims is a "reasonable accommodation" claim. (Dkt. No. 6 at ¶ 61). To satisfy the first element of a reasonable accommodation claim, a plaintiff must suffer from a disability as defined under the FHA. *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 621 (6th Cir. 2011). The FHA defines "handicap"—which is synonymous with "disability"—as "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. § 3602(h).[4]

Dr. Hendricks' report regarding Plaintiff Nelson begins as follows:

As per your request, a psychiatric examination of Sandra Nelson was conducted on January 10, 2013. [sic] For the purpose of generating a [sic] whether she has a psychiatric condition which prevented her from being able to engage in major life activities and whether a pet is a necessary component of the treatment.

(Dkt. No. 85-2). Thus, Dr. Hendricks noted at the outset that his task was to determine, in essence, whether Plaintiff Nelson suffers from a mental impairment that substantially limits her ability to engage in major life activities (i.e. a handicap under the FHA), and whether she needs an emotional support animal as part of her treatment for that impairment. He concluded that she demonstrated no signs of PTSD at the time of the evaluation—the primary impairment from which she claims to suffer. (Dkt. No. 85-2 at 4).

---

[4] The terms "handicap" and "disability" share the same legal definition. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998) ("The ADA's definition of disability is drawn almost verbatim from . . . the definition of 'handicap' contained in the Fair Housing Act Amendments of 1988, 42 U.S.C. § 3602(h). Congress' repetition of a well-established term carries the implication that Congress intended the term to be construed in accordance with pre-existing regulatory interpretations.").

Given the nature of the inquiry—as stated in Dr. Hendricks' introduction to his report—and Dr. Hendricks' finding that Plaintiff Nelson "manifested no signs of post-traumatic stress disorder," (Dkt. No. 85-2 at 1), as well as his attribution of her current emotional state to her housing situation (as opposed to an impairment),[5] a reasonable reading of Dr. Hendricks' report is that he concluded that Nelson does not suffer from a psychiatric disorder. Plaintiffs appear to agree—having acknowledged in a February 2013 filing that, "[i]n his reports, Dr. Hendricks opines that *neither Plaintiff suffers from a psychiatric disorder*." (Dkt. No. 78 at 10) (emphasis added).

Because Dr. Hendricks found that Plaintiff Nelson did not suffer from a psychiatric disorder, the conclusion would seem inescapable that the predicate for any treatment—and thus, obviously, the need for any treatment—would be absent. Further, because a pet—or an emotional support animal—was considered to be a "component of the treatment," the absence of any need for treatment would necessarily include an emotional support animal. To argue—as Plaintiffs do—that Dr. Hendricks should not be able to testify as to whether Plaintiff Nelson requires an emotional support animal because the report is "void of any [such] opinion" elevates form over substance and ignores the obvious.

Accordingly, the Court will deny Plaintiffs' request to preclude Dr. Hendricks from rendering an opinion at trial on the ultimate issue of whether Plaintiff Nelson requires an emotional support animal.

---

[5] As Plaintiffs note in their Motion, "Dr. Hendricks opined that although [Nelson] suffered from tearfulness, insomnia, crying spells, and anger*, the cause of her symptoms resulted from the loss of her home and not the deaths of four close friends in 2009*[.]" (Dkt. No. 85 at 4) (citing Dkt No. 85-2 at 4–5) (emphasis added). Dr. Hendricks stated in his report: "That [not living in her own condominium unit], in my professional opinion, is the proximate cause of her current emotional state." (Dkt. No. 85-2 at 5).

**B.     Dr. Bishop's Testimony**

Defendant argues that, because Plaintiffs failed to assert in their First Amended Complaint, their responses to interrogatories, or their Rule 26(a)(2)(C) summary of Dr. Bishop's expected testimony that Plaintiff Bedell's alleged alcoholism constitutes a disability under the FHA, Dr. Bishop should be precluded from so testifying at trial. Plaintiffs counter that Dr. Bishop should be permitted to opine on this issue because they produced Dr. Bishop's medical records, which heavily referenced Bedell's alleged alcoholism. Plaintiffs further argue that, during Dr. Bishop's deposition, "it was made known on several occasions throughout that one of the disabilities to which Dr. Bishop was referring was Plaintiff's alcoholism." (Dkt. No. 139 at 5).

**1.     Plaintiffs' Rule 26(a)(2)(C) Summary**

Plaintiffs' Rule 26(a)(2)(C) summary for Dr. Bishop mentioned Bedell's severe depression, stress, and anxiety, but did not mention the use of alcohol in any capacity. (*See* Dkt. No. 115-3 at 3). The summary provided in part that "Dr. Bishop is expected to provide opinion testimony regarding matters contained within his medical records, including all treatment, tests, recommendations, and diagnoses contained therein." (*Id.*). At the pretrial conference, Plaintiffs' counsel noted this reference to Bishop's records, and advised the Court that the records "were replete with references to Ms. Bedell's problem with alcoholism and his treatment of the alcoholism."

However, this Court agrees with other courts that have soundly rejected the notion that simply referring an opposing party to medical records may satisfy a party's Rule 26(a)(2)(C) disclosure requirements. *See, e.g.*, *Ibey v. Trinity Universal Ins. Co.*, 2013 U.S. Dist. LEXIS 116491 (D. Mont. Aug. 16, 2013); *Flonnes v. Property & Cas. Ins. Co.*, 2013 U.S. Dist. LEXIS

9

74018 (D. Nev. May 22, 2013); *Schultz v. Ability Ins. Co.*, 2012 U.S. Dist. LEXIS 154145 (N.D. Iowa Oct. 25, 2012); *Smith v. Barrow Neurological Inst.*, 2012 U.S. Dist. LEXIS 106219 (D. Ariz. July 30, 2012); *Lopez v. Keeshan*, 2012 U.S. Dist. LEXIS 85163 (D. Neb. June 20, 2012); *Ballinger v. Casey's General Store, Inc.*, 2012 U.S. Dist. LEXIS 45024 (S.D. Ind. Mar. 29, 2012). This Court "will not place a burden on Defendant[] to sift through medical records in an attempt to figure out" the specifics of Dr. Bishop's anticipated testimony. *Brown*, 2011 U.S. Dist. LEXIS 111098, at *4.

Plaintiffs' Rule 26(a)(2)(C) summary for Dr. Bishop stated that Dr. Bishop will opine that Plaintiff Bedell "has severe limitations in coping with stress and anxiety, and that these limitations substantially limit her major life activities[.]" (Dkt. No. 115-3 at 3). There was no mention of alcohol use. (*See id.*). The Rule 26(a)(2)(C) summary also referenced a letter that Dr. Bishop wrote on May 27, 2010. (Dkt. No. 115-6). However, like the Rule 26(a)(2)(C) summary itself, Dr. Bishop's May 27, 2010 letter mentioned anxiety, depression, and stress, but not alcohol use. (*Id.*). The letter went on to state that Plaintiff Bedell has "functional limitations imposed by her disability" and that she has "severe limitations in coping with stress and anxiety" that "substantially limit her major life activities . . . ." (*Id.*). Under these circumstances, the Court finds that Defendant could not have been expected to understand from Plaintiffs' Rule 26(a)(2)(C) summary and Dr. Bishop's May 27, 2010 that Dr. Bishop would opine that Plaintiff Bedell's alleged alcohol use constituted a disability under the FHA.

### 2. Dr. Bishop's Deposition

Plaintiffs further argue that because Dr. Bishop testified in his deposition that one of Plaintiffs' alleged disabilities was alcoholism, he should be able to so testify at trial. The Court

notes that an expert's Rule 26(a)(2)(B) report typically cannot be expanded through deposition testimony. The Seventh Circuit has held:

> Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony. The purpose of Rule 26(a)(2) is to provide notice to opposing counsel—*before the deposition*—as to what the expert witness will testify, and this purpose would be completely undermined if the parties were allowed to cure deficient reports with later deposition testimony.

*Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) (emphasis added).

This rationale applies with equal force to Rule 26(a)(2)(C) disclosures, which must include "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(ii). Although the advisory notes provide that a Rule 26(a)(2)(C) disclosure is "considerably less extensive than the report required by Rule 26(a)(2)(B)," the Court finds that a Rule 26(a)(2)(C) summary of "the facts and opinions" of a witness's expected testimony should, at a minimum, include the witness's opinions regarding the plaintiff's substantive claims—in this case, that one of the disabilities from which Plaintiff Bedell allegedly suffered was alcoholism. *See Brown*, 2011 U.S. Dist. LEXIS 111098, at *3 (noting that Rule 26(a)(2)(B) reports and Rule 26(a)(2)(C) summaries "share the goal of increasing efficiency and reducing unfair surprise."). Thus, Dr. Bishop's expansion, in his deposition testimony, of "the facts and opinions" to which he would testify to include an opinion that effectively added a new substantive claim cannot serve as the basis by which the Rule 26(a)(2)(C) disclosure requirement is satisfied.

### 3. *Pennypack* Factors

Before levying the "extreme sanction" of excluding this evidence, the Court must consider the *Pennypack* factors—including any prejudice and surprise to Defendant, Defendant's ability to cure, the extent allowing the evidence would disrupt the proceedings, any bad faith on

Plaintiffs' part, and the importance of the evidence. *ZF Meritor*, 696 F.3d at 298 (citing *Pennypack Woods Home Ownership Ass'n*, 559 F.2d at 904–05). Upon consideration of the *Pennypack* factors, and given the unique circumstances of this case, the Court will not preclude Dr. Bishop—on timeliness grounds—from opining at trial that Plaintiff Bedell's alleged alcoholism constitutes a disability under the FHA.

The first *Pennypack* factor favors exclusion here because Defendant suffered significant prejudice and surprise through Dr. Bishop's untimely and improper revelation at his deposition that Plaintiff Bedell allegedly suffers from the disability of alcoholism, given that Plaintiffs did not previously disclose this claim. However, as to the second factor, Defendant has had ample opportunity to cure. Dr. Bishop's deposition was conducted approximately a year before Defendant filed its Motion *in Limine*. During the deposition, Defendant's counsel's asked: "So it is fair to say the disability you're referencing is the alcohol?" and Dr. Bishop responded: "It would be mainly the alcohol." (Dkt. No. 139-3 at 14–15). Additionally, Dr. Bishop mentioned Plaintiff Bedell's alleged alcohol use at numerous other points of his Deposition. (*See, e.g.*, *id.* at 3–6, 8, 11, 14, 17).[6]

---

[6] Defendant argues that, when viewed in context, Dr. Bishop's references to Plaintiff Bedell's alleged alcoholism were not meant to suggest that it is a disability in its own right, but rather to illustrate that her alleged alcoholism is one of her limitations in coping with her alleged depression, stress, and anxiety. (Dkt. No. 152). Based upon its review of Defendant's submission of sections of the deposition transcript, the Court disagrees with this characterization of Dr. Bishop's deposition testimony. Moreover, even if one were to accept Defendant's interpretation of Dr. Bishop's testimony, this would not alter the Court's conclusion because Bedell's alleged limitations in coping with her stress and anxiety were described in her Rule 26(a)(2)(C) disclosure as limitations that "substantially limit her major life activities." (Dkt. No. 115-3 at 3; Dkt. No. 115-6). This is the definition of a handicap (or disability) under the FHA. 42 U.S.C. § 3602(h).

Thereafter, the Court granted Defendant's "Emergency Motion to Extend Expert Discovery Deadline," because Defendant stated that it needed to depose Dr. Hendricks to respond to "information regarding the qualifications and methodologies (if any) used to arrive at the ultimate opinions of Plaintiffs' treating physicians." (Dkt. No. 76 at 5). Thus, Defendant—through Dr. Hendricks—had the opportunity to address the opinions expressed during the depositions of Dr. Bishop and Plaintiffs' other treating physicians. Further, Defendant was fully aware of this issue for a year, but neglected to raise it until the eve of trial. Thus, because of Defendant's opportunity to cure, the second *Pennypack* factor favors allowing Dr. Bishop to opine that Plaintiff's Bedell's alleged alcoholism constitutes a disability under the FHA.

With regard to the other *Pennypack* factors, the Court finds that Dr. Bishop's testimony regarding Plaintiff Bedell's alleged alcoholism would not disrupt the proceedings and that Plaintiffs did not act in bad faith. Further, the evidence Defendant seeks to exclude is highly important, given the centrality of Plaintiffs' alleged disabilities to the case.

Accordingly, given the circumstances of this case—particularly Defendant's ample opportunity to cure, including an extension at Defendant's behest of the expert discovery deadline—the *Pennypack* factors favor inclusion of the evidence. The Court will therefore deny Defendant's Motion *in Limine* seeking to preclude Dr. Bishop—on timeliness grounds—from opining at trial that Plaintiff Bedell's alleged alcoholism constitutes a disability under the FHA.[7]

---

[7] The Court notes the narrowness of its holding. Although Dr. Bishop is not precluded from opining at trial that Plaintiff Bedell's alleged alcoholism is a disability under the FHA *on the grounds that this theory was untimely disclosed*, Defendant is not foreclosed from objecting to Dr. Bishop's testimony relating to Plaintiff Bedell's alleged alcoholism on other grounds, if any, that it deems appropriate.

Notwithstanding the Court's ruling that Defendant had ample opportunity to cure the problem created by Plaintiffs' untimely disclosure, the case presents the unique circumstance that the trial of this matter has been postponed indefinitely due to Plaintiff Bedell's sudden illness. Accordingly, the Court will afford Defendant an additional opportunity to cure, if it so chooses, by providing a supplement to its expert report narrowly tailored to the issue of Plaintiff Bedell's alleged alcoholism as a disability under the FHA. The Court will also afford Plaintiffs the opportunity to conduct a deposition narrowly tailored to the substance of Defendant's supplemental expert report.

## IV.   CONCLUSION

For the reasons stated above, the Court will deny Plaintiffs' Motion *in Limine* and permit Dr. Hendricks to opine at trial regarding Plaintiff Nelson's need for an emotional support animal. The Court will also deny Defendant's Motion *in Limine* seeking—on grounds of untimeliness—to preclude Dr. Bishop from opining at trial regarding Plaintiff Bedell's alleged alcoholism as a disability under the FHA. Given the indefinite postponement of the trial, Defendant will be given an additional opportunity to cure by providing a supplement to its expert report, and Plaintiffs will be afforded an opportunity to address Defendant's supplemental report. An appropriate Order accompanies this Memorandum Opinion.

Date: April 30, 2014                                    _____/s/_____
                                                        WILMA A. LEWIS
                                                        Chief Judge