# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| SANDRA NELSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| LONG REEF CONDOMINIUM ) | Civil Action No. 2011-0051 |
| HOMEOWNERS ASSOCIATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| LONG REEF CONDOMINIUM ) | |
| HOMEOWNERS ASSOCIATION, ) | |
| ) | |
| Counter-Claimant, ) | |
| ) | |
| v. ) | |
| ) | |
| SANDRA NELSON, ) | |
| ) | |
| Counter-Defendant. ) | |
| ) | |

**Attorneys:**
**Daryl Barnes, Esq.,**
**Paul R. Neil, Esq.,**
St. Croix, U.S.V.I.
    *For the Plaintiff/Counter-Defendant*

**Douglas L. Capdeville, Esq.,**
**Ellen G. Donovan, Esq.,**
**Melissa P. Ortiz, Esq.,**
St. Croix, U.S.V.I.
    *For the Defendant/Counter-Claimant*

**MEMORANDM OPNINION**

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Defendant/Counter-Claimant Long Reef Condominium Homeowners Association's "Motion for New Trial On Issue of Punitive Damages or in the Alternative for Remittitur" (Dkt. No. 234); Memorandum in support thereof (Dkt. No. 235); and Plaintiff/Counter-Defendant's Opposition thereto (Dkt. No. 241). For the reasons advanced below, Defendant's Motion will be denied.

## I.  BACKGROUND

Plaintiff Sandra Nelson ("Nelson") purchased a condominium unit at Long Reef, a condominium association, in April 2004. (Dkt. No. 231 at 2). At the time that she purchased the unit, Long Reef had a "no pets" policy barring the raising, breeding or keeping of animals within the condominium complex. (*Id.*).

During an approximately six-month period in 2009, Nelson suffered the loss of four people close to her—including an immediate family member—in unexpected, and in some cases violent, circumstances. (*Id.* at 3-4). One of those individuals was murdered in Nelson's presence. (*Id.*). This bereavement caused Nelson significant emotional and mental distress, which manifested itself in physical symptoms, including insomnia, an inability/unwillingness to socialize, and panic attacks. (*Id.* at 5). For some time, she was unable to leave her condominium unit at Long Reef due to her psychological distress. (*Id.*). Nelson, a musician by trade, cancelled paid performances due to fear and emotional breakdowns. (*Id.*).

During 2009, Nelson acquired a stray Chihuahua, "Pawla," which she eventually brought to live with her at Long Reef. (*Id.* at 6-7). The dog was able to bring her comfort and joy and brought her out of "depressed states of mind." (*Id.*). Pawla helped Nelson to "feel safe," and

operated as a "warning system" by alerting her to the presence of strangers. (*Id.* at 7 and 10). Pawla accompanied Nelson everywhere she went, including to work. (*Id.*). Nelson sought and obtained professional help for her mental and emotional state—which at one point had necessitated a doctor's visit due to an anxiety attack so intense that Nelson believed she was having a heart attack. (*Id.* at 7-12). Nelson ultimately secured a letter from a licensed clinical social worker stating that she should "have a dog for safety and companionship." (*Id.* at 11).[1]

In December 2009, Long Reef wrote Nelson to inform her that, pursuant to the no pets policy, Pawla had to be removed from the premises, and that failure to do so would result in fines and legal action. (*Id.* at 16). Nelson attempted to inform Long Reef's Board of Directors of her need for a service animal through a Board Member, but it is unclear whether this request reached the Board as a whole. (*Id.* at 17). Regardless, the Board began levying fines against Nelson beginning in 2010. (*Id.*). Two weeks after the first fine, Nelson provided Long Reef with a handwritten letter, via the then office manager, informing the Board that her pet was a necessary companion and that she was electing not to pay the fine. (*Id.* at 18). That letter further requested that the issue "be discussed with all owners at the annual meeting." (*Id.*). The office manager informed Nelson that her request was insufficient, and Nelson asked what documentation would be sufficient. (*Id.*). The office manager did not then, nor did she ever, inform Nelson of the requisite documentation. (*Id.*). She did, however, provide Nelson's letter to the Board. (*Id.*).

The Long Reef Board of Directors discussed the pet issue at its March 2010 homeowners meeting. (*Id.* at 18). Nelson did not attend, instead submitting a proxy. (*Id.*). Long Reef was unable

---

[1] The social worker testified that when a dog is not therapeutically necessary, she refuses to write such letters. In this regard, the social worker further testified that she had written such a letter on only three occasions, despite having been asked to do so by many people. (Dkt. No. 231 at 11).

3

to testify as to whether anyone followed up with Nelson after the meeting, at which some homeowners decided to form a pet committee. (*Id.* at 18-19).

Long Reef consulted its legal counsel regarding Pawla in April 2010, and a complaint was filed against Nelson in Superior Court, seeking a declaratory judgment that Nelson was in violation of the "no pets" policy and could not keep Pawla on the premises. (*Id.* at 19, 46). Nelson wrote two more letters to Long Reef on June 3, 2010 and July 16, 2010, the second of which stated that she "would like to know, specifically, what documentation Long Reef requires for the presence of a service animal in the future." (*Id.* at 19-20). Both letters were referred by the Board to Long Reef's legal counsel, and Long Reef admitted that it did not provide Nelson any explanation of what specific documentation it required for a service animal. (*Id.* at 19-21). In response to Nelson's July 16, 2010 letter, Long Reef informed her that any further correspondence would have to go through legal channels, and would result in additional legal fees. (*Id.* at 21).

Nelson paid $1,520 in legal fees in connection with the Superior Court action. (*Id.*). Long Reef also filed a lien against Nelson's property for $1,308.15, representing unpaid charges, interest, costs and attorney's fees in connection with the pet fines it had assessed against Nelson. (*Id.*). Although Long Reef ultimately removed the lien, Nelson moved out of Long Reef for an extended period of time because she "didn't feel comfortable" and felt she was being "harassed" with "pet fines." (*Id.* at 23-26).

Nelson made a request for reasonable accommodation, through counsel, in a letter dated June 13, 2011. (*Id.* at 22-23). Long Reef did not respond, and referred the letter to its legal counsel. (*Id.* at 23). Neither Long Reef nor its counsel ever told Nelson what documentation Long Reef required to support a request for reasonable accommodation. (*Id.*).

4

On August 5, 2016, this Court issued its Findings of Fact and Conclusions of Law following a three-day bench trial. (Dkt. No. 231). The Court found that Long Reef's actions amounted to reckless or callous indifference to the federally protected rights of others. (*Id.* at 54). Testimony established that Long Reef was aware that it was required to comply with the Fair Housing Act, when applicable. (*Id.* at 55). Notwithstanding its knowledge in this regard, the Court found that Long Reef "(1) did not respond to Nelson's repeated requests to identify the documentation required for a service animal; (2) failed to request documentation from Nelson that supported her request for an exception to the 'no pets' policy; (3) refused to engage in a dialogue with Nelson about her requested accommodation; (4) imposed fines on Nelson for violating the 'no pets' policy, and initially imposed a lien on her property, notwithstanding Nelson's repeated requests for information pertaining to an accommodation; and (5) filed a lawsuit against Nelson—almost immediately after her initial request for an accommodation—seeking a declaratory judgment that it was not required to make the requested accommodation." (*Id.*). The Court found that these facts established that there was no attempt by Long Reef to obtain relevant information from Nelson to determine if the FHA applied. (*Id.*). The Court awarded Nelson $12,000 in compensatory damages and $45,000 in punitive damages. (Dkt. No. 232 at 2).

Defendant filed the instant Motion on September 1, 2016, asserting that the Court did not consider evidence of Defendant's financial condition when issuing its punitive damages award, and that the Court erred in ruling that Defendant acted "recklessly and callously." (Dkt. Nos. 234 at 1, 235 at 5-9). As relief, Defendant seeks a new trial on the issue of punitive damages, or in the alternative, a reduction of the punitive damages award. (Dkt. No. 235 at 1). Plaintiff opposes Defendant's Motion, arguing that there is no requirement that the Court consider net worth before awarding punitive damages; Defendant is capable of paying the award; Defendant's Motion is

5

really an untimely motion for reconsideration; and the award accomplishes appropriate goals of punitive damages. (Dkt. No. 241 at 4-8).

## II. APPLICABLE LEGAL PRINCIPLES

Defendant's motion is filed pursuant to Fed. R. Civ. P. 59(a)(1), 59(a)(2), and 59(e) "should 59(e) be the proper vehicle" for Defendant's motion for remittitur. (*Id.* at 1).

Pursuant to Rule 59(a)(1) of the Federal Rules of Civil Procedure, a court may grant a motion for a new trial "after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. Civ. P. 59(a)(1)(B). "'A motion for a new trial in a nonjury case or a petition for rehearing should be based upon manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons.'" *Glemser v. United States*, 2010 WL 1688544, at *1 (D.N.J. Apr. 26, 2010) (quoting 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2804 (2010)); *see also Sabinsa Corp. v. Creative Compounds, LLC*, 2012 WL 194123, at *2 (D.N.J. Jan. 23, 2012) ("In non-jury cases, the granting of a new trial is usually reserved for instances in which the trial was infected with manifest errors of law or fact." (internal quotation marks omitted)).

Similarly, when granting a motion for a new trial under Fed. R. Civ. P. 59(a)(2), courts cite three grounds: "(1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence." *Glemser*, 2010 WL 1688544, at *1. Some of the most common reasons for granting a new trial are "'verdicts which are against the weight of the evidence, excessive damages, evidentiary flaws, the discovery of important new evidence, and the prevention of injustice.'" *Ashraf-Hassan v. Embassy of France*, 185 F. Supp. 3d 94, 112 (D.D.C. 2016) (quoting *Azevedo v. Hous. Auth. of City of Sarasota*, 147 F.R.D. 255, 257 (M.D. Fla. 1993)). The Supreme Court has reaffirmed that federal district court judges have the "'discretion to grant a new trial if the verdict

appears to [the judge] to be against the weight of the evidence.'" *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 433 (1996) (quoting *Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525, 540 (1958)).

The trial judge's Rule 59(a) discretion also includes the authority to reduce the size of the verdict. *Hayes v. Cha*, 338 F. Supp. 2d 470, 495–96 (D.N.J. 2004). A motion for remittitur is a motion for reconsideration, and as such, may only be granted under limited circumstances, such as to correct clear error or prevent manifest injustice. *Max's Seafood Café v. Quinteros,* 176 F.3d 669, 677 (3d Cir.1999)). An award should not be disturbed "unless the amount [is] so exorbitant that it 'shock[s] the conscience of the court.'" *Gasperini*, 518 U.S. at 422; *see also Evans v. Port Auth. of N.Y. & New Jersey*, 273 F.3d 346, 355 (3d Cir. 2001); *Tormenia v. First Inv'rs Realty Co.*, 251 F.3d 128, 138 (3d Cir. 2000). Remittitur is appropriate when the Court finds that there was no rational basis for the sum awarded or the amount is "so excessive that it shocks the judicial conscience and raises an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial." *F.T.C. v. Chapman*, 714 F.3d 1211, 1219 (10th Cir. 2013); *see Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 392 (3d Cir. 2016); *Henry v. Hess Oil Virgin Islands Corp.*, 163 F.R.D. 237 (D.V.I. 1995). This standard applies whether the motion comes following a bench trial or jury trial. *See Chapman*, 714 F.3d at 1219 (upholding district court's denial of remittitur following a bench trial upon finding that movant had not shown "clear error, manifest injustice, or an award of damages so excessive as to shock the conscience").

Under Fed. R. Civ. P. 59(e), a party may move to relitigate an issue decided by the court, and such a motion "'is used to allege legal error.'" *Norman v. Elkin*, 849 F. Supp. 2d 418, 421 (D. Del. 2012) (quoting *United States v. Fiorelli,* 337 F.3d 282, 288 (3d Cir.2003)). In order to prevail on a Rule 59(e) motion, a party must show "(1) an intervening change in the controlling law; (2)

the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice." *Id.* (citing *Max's Seafood Café,* 176 F.3d at 677).

### III. DISCUSSION

Defendant's legal argument supporting its Motion rests on the Court's failure to consider Defendant's financial condition in imposing punitive damages, and its contention that finding Defendant's conduct to be reckless and callous was in error. (Dkt. No. 235 at 5-9). Neither argument warrants a new trial under the circumstances here.

Addressing first the claim that the Court erred in finding that Defendant acted "recklessly and callously," Defendant must establish that the Court made a manifest error of law in holding that Defendant was acting with "knowledge that it may be acting in violation of federal law." *Alexander v. Riga*, 208 F.3d 419, 431 (3d Cir. 2000); *Glemser*, 2010 WL 1688544, at *1. Defendant has failed to meet this burden.

In support of its position, Defendant argues that it discussed the no pets policy at a homeowners' meeting and turned the matter over to its counsel. The Court has already considered the testimony of Johanna Renzi upon which Defendant relies, and rejected this argument as an insufficient response by Defendant to the situation with which it was presented. As noted earlier, the Court found that, despite being aware of its obligations under the FHA, Defendant made no attempt to obtain relevant information regarding Nelson's disability notwithstanding her repeated requests for information and accommodation; refused to engage in a dialogue with her; imposed fines against her; put a lien on her property; and sued her in Superior Court. (Dkt. No. 231 at 55). Thus, the evidence presented at trial provided a sufficient factual basis to conclude that Defendant acted with actual knowledge or reckless disregard of Nelson's federally protected rights. *See Miller*

*v. Apartments & Homes*, 646 F.2d 101, 111 (3d Cir. 1981). Defendant's reiteration of the same argument made at trial—which was already properly rejected by the Court—does not advance its cause. *Ashraf-Hassan*, 185 F. Supp. 3d at 112 ("Rule 59 is not a vehicle for relitigating old issues . . . or otherwise taking a 'second bite at the apple.'" (internal quotations omitted)).

Defendant also points to the Court's denial of Plaintiff's intentional infliction of emotional distress claim as evidence that its conduct was not reckless and callous. (Dkt. No. 235 at 8-9). However, such an argument misconstrues the applicable standards. As explained in the Court's Findings of Fact and Conclusions of Law, the "extreme and outrageous conduct" standard required for an intentional infliction of emotional distress claim is higher than the "reckless or callous indifference" standard for the imposition of punitive damages. (Dkt. No. 231 at 53-54 (citing *Alexander*, 208 F.3d at 430-31)). Extreme and outrageous conduct must "go beyond all possible bounds of decency, and . . . be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46 cmt. D (1965). On the other hand, reckless indifference focuses on the actor's state of mind, and refers to a party's "knowledge that it may be acting in violation of federal law." *Alexander*, 208 F.3d at 431. Therefore, the Court's holdings are not inconsistent, and Defendant's argument does not show that there was an error of law or that the Court's holding was against the weight of the evidence.

Defendant further contends that the failure of Plaintiff's disparate treatment claim, based on the fact that Defendant asked other tenants for additional support for their requests, is inconsistent with the imposition of punitive damages. (Dkt. No. 235 at 9). Such a contention is misguided. Indeed, the fact that Defendant asked other tenants for additional support for their requests actually supports the conclusion that Defendant was aware that Nelson had a federally protected right to a reasonable accommodation for Pawla, but stymied her efforts to obtain such

an accommodation by failing to respond to her repeated inquiries regarding the proper procedures for requesting such accommodation, refusing to engage in a dialogue, and filing a lawsuit against her. *Miller*, 646 F.2d at 111 (stating that punitive damages are appropriate when a defendant has acted "with actual knowledge" or "reckless disregard" of whether he is violating a federally protected right, or "with such conscious and deliberate disregard of the consequences" of actions that the "conduct is wanton").[2] Thus, the Court rejects Defendant's argument in this regard as well.

In short, the Court finds that it made no manifest error of law or fact in concluding that Defendant acted with reckless and callous indifference to Nelson's federally protected right to reasonable accommodation. (Dkt. No. 231 at 55-56). Accordingly, this argument presents no basis for granting a new trial on punitive damages.

Defendant's second argument that the Court's failure to consider Defendant's financial condition warrants a new trial on punitive damages fares no better. Defendant has not shown that the failure to consider such evidence—that was not presented to the Court—constitutes either a manifest error of law, or new evidence that may be presented pursuant to Rule 59.

As Defendant itself admits, the Court need not consider Defendant's ability to pay in determining a damages award (Dkt. No. 235 at 6), thus precluding the Court from finding that it made a manifest error of law on that basis. Defendant's admission is consistent with the Supreme

---

[2] Defendant argues that cases relied upon by the Court in support of its finding that Long Reef's conduct was reckless and callous, *Alexander*, 208 F.3d 419 and *Miller*, 646 F.2d 101, are distinguishable because those cases involved persistent refusals to deal with African-Americans. (Dkt. No. 235 at 8). However, those cases describe the contours of the law of punitive damages in the FHA context. The fact that Long Reef's discrimination was based on disability rather than race does not render the law regarding punitive damages outlined in those cases any less applicable here. (*See* Dkt. No. 231 at 54). Indeed, the persistence of Defendant's refusal to engage with Nelson mirrors the persistent refusal to deal with African-Americans—albeit as to a single individual. Thus, the factual distinctions between the cases noted by Defendant do not establish that the Court committed a manifest error of law or fact.

Court's "guideposts" for evaluating the reasonableness of punitive damage awards, from which a defendant's wealth or ability to pay is conspicuously absent. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574-75 (1996).

Further, it was Defendant's choice not to offer evidence of its financial health for the Court's consideration, as opposed to a failure on the part of the Court to consider it. In effect, Defendant now seeks to present new evidence for the Court's consideration.

In order to present new evidence under Rule 59, such evidence must: "(1) be material and not merely cumulative, (2) could not have been discovered before trial through the exercise of reasonable diligence and (3) would probably have changed the outcome of the trial." *Compass Tech., Inc. v. Tseng Labs., Inc.*, 71 F.3d 1125, 1130 (3d Cir. 1995). "Any party requesting such relief 'bears a heavy burden.'" *Id.* (quoting *Bohus v. Beloff,* 950 F.2d 919, 930 (3d Cir. 1991)).

Under the circumstances here, the Court concludes that Defendant seeks "to introduce evidence that was available at the time of trial but was not proffered, to advance new theories, or to secure a rehearing on the merits," all of which are impermissible grounds for a Rule 59 motion. *Ashraf-Hassan*, 185 F. Supp. 3d at 112-13 (denying new trial on the basis of evidence that Defendant could, but did not, present at trial).[3] Further, as the ability to pay is merely a permissive consideration, Defendant has not demonstrated that the proffered evidence would probably have changed the outcome of the trial. *Compass Tech.,* 71 F.3d at 1130.[4]

---

[3] Although the title of the Balance Sheet provided by Defendant states that the statement is "[a]s of August 31, 2016" (Dkt. No. 235-1 at 5-6), Defendant could have presented similar information reflecting the Association's financial health as of the time of trial.

[4] The mere fact that Defendant claims that it would be a hardship to pay the punitive damages award in view of its "accounts, expenses, replacement schedule, and current project allotments for the benefit of the condominium owners," (Dkt. No. 235 at 5) does not establish that the proffered evidence would probably have altered the outcome. As Plaintiff aptly notes, Defendant was prepared to deposit the $45,000 into the Court's registry (Dkt. Nos. 237, 241 at 8), thus suggesting

In short, Defendant's arguments do not sustain its heavy burden of showing that the Court committed a manifest error of law or mistake of fact. *See Compass Tech.,* 71 F.3d at 1130; Charles Alan Wright & Arthur R. Miller, *11 Fed. Prac. and Proc*. § 2804 (3d ed.). Accordingly, Defendant's motion for a new trial will be denied. *Id.*

Finally, the Court rejects Defendant's request for remittitur. The Court finds that the punitive damages award neither shocks its conscience, nor gives rise to the presumption that its passions were inflamed. *Chapman*, 714 F.3d at 1219. While the Supreme Court has declined to articulate a bright-line ratio between compensatory and punitive damages, it has suggested that "awards exceeding a single-digit ratio between punitive and compensatory damages" likely violate due process. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). Historically, courts have sanctioned "double, treble, or quadruple damages to deter and punish." *Id.* In this case, the punitive damages award of $45,000 is less than four times the amount of compensatory damages ($12,000), and within the historical range for punitive damages awards. Further, as conceded by Defendant and discussed above, the articulated legal basis for remittitur—the Court's alleged failure to consider Defendant's financial status—is not an error of law. (Dkt. No. 235 at 6); *see also Gore*, 517 U.S. at 574-75 (1996) (identifying "guideposts" for evaluating the reasonableness of punitive damage awards that do not include a defendant's wealth or ability to pay). Nor has there been any showing of manifest injustice. *See* note 4 *supra*.

As an alternative, Defendant "seeks to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) as to the remittitur issue, should 59(e) be the proper vehicle." (Dkt. No. 235 at 1 n.1). A Rule 59(e) motion is a motion for reconsideration, and a vehicle through which to allege legal

---

that monies can be made available. Moreover, as Plaintiff further notes, allocation and reallocation of funds between various uses is not an uncommon occurrence for homeowner associations. (Dkt. No. 241 at 8).

error. *Norman*, 849 F. Supp. 2d at 421. In order to warrant reconsideration Defendant must establish "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice." *Id.* (citing *Max's Seafood Café,* 176 F.3d at 677).

Rule 59(e), as an avenue for relief, is also unavailing here. Defendant has not shown that there has been an intervening change in the controlling law, or that *new* evidence has become available. *Id.*; *see* note 3 *supra*. Nor has Defendant demonstrated that the Court made a "clear error of law" in awarding punitive damages of $45,000, or that there is a need to prevent manifest injustice. *Norman*, 849 F. Supp. 2d at 421. Thus, Defendant cannot seek refuge in Rule 59(e).

Additionally, Local Rule of Civil Procedure 7.3 requires parties to file motions for reconsideration "within fourteen (14) days after entry of the order or decision." The Court's Judgment and Findings of Fact and Conclusions of Law were entered on August 5, 2016. (Dkt. Nos. 231 and 232). Defendant's Motion was filed twenty-seven days later on September 1, 2016. (Dkt. No. 234). Therefore, in addition to failing on the merits, Defendant's Motion is also untimely under LRCi 7.3 to the extent that it is a motion for reconsideration.

## IV.  CONCLUSION

As Defendant has failed to carry its "heavy burden" of demonstrating its entitlement to a new trial on punitive damages or a remittitur of the $45,000 punitive damages award, Defendant's Motion will be denied. *Compass Tech.,* 71 F.3d at 1130.

An appropriate Order accompanies this Memorandum Opinion.

Date: May 5, 2017                                    _____/s/_____
                                                     WILMA A. LEWIS
                                                     Chief Judge