## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **SANDRA NELSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | |
| **LONG REEF CONDOMINIUM** | ) | **Civil Action No. 2011-0051** |
| **HOMEOWNERS ASSOCIATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| **LONG REEF CONDOMINIUM** | ) | |
| **HOMEOWNERS ASSOCIATION,** | ) | |
| | ) | |
| **Counter-Claimant,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SANDRA NELSON,** | ) | |
| | ) | |
| **Counter-Defendant.** | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

**Attorneys:**
**Kevin F. D'Amour, Esq.**
**Gaylin Vogel, Esq.**
St. Thomas, U.S.V.I.
         *For Plaintiff/Counter-Defendant*

**Douglas L. Capdeville, Esq.**
**Ellen G. Donovan, Esq.**
**Mia L. Woodward, Esq.**
St. Croix, U.S.V.I.
         *For Defendant/Counter-Claimant*

<u>**MEMORANDUM OPNINION**</u>

**Lewis, District Judge**

THIS MATTER comes before the Court on Plaintiff/Counter-Defendant Sandra Nelson's ("Plaintiff" or "Nelson") "Motion and Memorandum of Law in Support of Plaintiff's Request for Attorneys' Fees and Costs" ("Fee Petition") (Dkt. No. 233) and seven accompanying exhibits (Dkt. Nos. 233-1 to 233-7); Defendant/Counter-Claimant Long Reef Condominium Homeowners Association's ("Long Reef" or "Defendant") Response (Dkt. Nos. 238 and 238-1) and seven accompanying exhibits (Dkt. Nos. 238-2 to 238-8); Nelson's Reply (Dkt. No. 240) and eleven accompanying exhibits (Dkt. Nos. 240-1 to 240-11); Long Reef's Sur-reply (Dkt. No. 251) and three accompanying exhibits (Dkt. Nos. 251-1 to 251-3); and Nelson's Response to Sur-reply (Dkt. No. 252).

Plaintiff seeks attorneys' fees and costs in the total amount of $271,508.77. For the reasons discussed below, the Court will grant in part and deny in part Nelson's Motion. The Court will award $106,900 in attorneys' fees for time spent on the underlying litigation, $6,345 in additional attorneys' fees for work done on Plaintiff's Fee Petition, and $6,382.44 for costs, for a total of $119,627.44.

## I.    BACKGROUND

The following is a summary of the facts relevant to Plaintiff's Fee Petition.[1]

### A.    Factual Background

Sandra Nelson purchased a housing unit at Long Reef, a condominium association, in 2004. (Dkt. No. 231 at ¶ 3). During 2009, Nelson suffered the loss of three loved ones, including an

---

[1] A full account of the facts of this case can be found in the Court's Findings of Facts and Conclusions of Law. (Dkt. No. 231).

immediate family member, in unexpected and violent circumstances. *Id.* at ¶¶ 10, 15, & 17. This bereavement caused her significant emotional and mental distress, which manifested itself in physical symptoms. *Id.* at ¶¶ 11, 18-19. The same year, Nelson acquired a stray chihuahua, "Pawla," to bring her comfort and lift her out of her "depressed states of mind." *Id.* at ¶¶ 32-33. She eventually brought Pawla to live with her at Long Reef. *Id.* at ¶¶ 32-33. Long Reef, however, had a "no pets" policy in effect at the time. *Id.* at ¶ 4. Cognizant of this policy, Nelson obtained a letter from a licensed clinical social worker stating that she should "have a dog for safety and companionship," and repeatedly sought for Long Reef to accommodate her and Pawla. *Id.* at ¶¶ 60, 93-126. Despite Nelson's persistent requests and corroborated need for an emotional support animal, Long Reef refused to make an accommodation or open a dialogue with Nelson regarding how to obtain an accommodation. *Id.* at ¶¶ 98, 101, 108. Instead, in 2010, Long Reef filed suit against Nelson in Superior Court, seeking a declaratory judgment effectively requesting the Court to hold that no accommodation was necessary. *Id.* at ¶¶ 108, 108 n.20.

In 2011, Anne Marie Bedell—another Long Reef resident with whom Nelson had worked in an attempt to secure an accommodation, and whose emotional support animal Long Reef had similarly refused to accommodate—filed suit against Long Reef in this Court. (Dkt. No. 1). Bedell sought declaratory relief and damages for alleged intentional discrimination and denial of reasonable accommodations under the Fair Housing Act ("FHA").[2] *Id.* She also sought damages under various territorial causes of action, including Slander of Title, Intentional Harm to a Property

---

[2] A plaintiff may bring three general types of claims under the applicable provisions of the FHA, namely: "(1) intentional discrimination claims (also called disparate treatment claims) and (2) disparate impact claims, both of which arise under [42 U.S.C.] § 3604(f)(2), and (3) claims that a defendant refused to make 'reasonable accommodations,' which arise under § 3604(f)(3)(B)." *Cmty. Srvs. v. Wind Gap Mut. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005).

Interest, and Intentional Infliction of Emotional Distress. *Id.* Two months later, Bedell amended her Complaint to add Nelson as a plaintiff, alleging the same causes of action with respect to Nelson except for Intentional Harm to a Property Interest. (Dkt. No. 6).

In 2012, the Magistrate Judge directed the parties to mediate their dispute. (Dkt. No. 53). Attempts at mediation ultimately proved unsuccessful, *see* (Dkt. No. 58), and a bench trial was scheduled for March 2014 (Dkt. No. 107). The trial was continued pending further Order of the Court in light of Bedell's deteriorating health (Dkt. No. 148), and Bedell passed away in January 2015. (Dkt. No. 172).

The Court subsequently held a three-day bench trial on Nelson's claims (Dkt. Nos. 217-219), and issued its Findings of Fact and Conclusions of Law (Dkt. No. 231). In summary, the Court found that Long Reef:

> (1) did not respond to Nelson's repeated requests to identify the documentation required for an emotional support animal; (2) failed to request documentation from Nelson that supported her request for an exception to the "no pets" policy;  (3) refused to engage in a dialogue with Nelson about her requested accommodation; (4) imposed fines on Nelson for violating the "no pets" policy, and initially imposed a lien on her property, notwithstanding Nelson's repeated requests for information pertaining to an accommodation; and (5) filed a lawsuit against Nelson— almost immediately after her initial request for an accommodation— seeking a declaratory judgment that it was not required to make the requested accommodation.

*Id.* at ¶ 122. In light of these and other facts, the Court ultimately found that Long Reef improperly refused to reasonably accommodate Nelson in violation of the FHA, and denied Long Reef's counterclaim for a declaratory judgment. *Id.* The Court found against Nelson on her claim of intentional discrimination under the FHA and on her claim of Intentional Infliction of Emotional

Distress.[3] *Id.* at ¶ 113. Based on Long Reef's refusal to provide Nelson a reasonable accommodation for Pawla, the Court awarded Nelson $12,000 in actual damages and $45,000 in punitive damages. (Dkt. No. 232 at 2). The Court further found that, as the prevailing party under 42 U.S.C. § 3613(c)(2), Nelson was entitled to reasonable attorneys' fees and costs upon "proper application" *Id.*

### B.  Nelson's Fee Petition

Consistent with the Court's Order, Plaintiff seeks attorneys' fees and costs under 42 U.S.C. § 3613(c)(2). Section 3613(c)(2) provides that "the court, in its discretion, may allow the prevailing party, other than the United States, [] reasonable attorney's fees and costs." 42 U.S.C. § 3613(c)(2).

In her Fee Petition, Nelson seeks $252,552.60 in attorneys' fees for 796 hours of work and $9,086.17 in costs, totaling $261,638.77. (Dkt. No. 233 at 3). In her Reply, Nelson seeks an additional $9,870 in attorneys' fees for work performed "in preparing the Motion and Memorandum of Law in Support of Plaintiff's Request for Attorneys' Fees and Costs, in preparing [the] Reply brief . . . [and] in reviewing and filing an Opposition to Defendant's Motion for a stay and/or Posting of a Bond." (Dkt. No. 240). Plaintiff's submissions include supporting documentation. (Dkt. No. 240-11).

Defendant challenges Plaintiff's Motion on a number of grounds. (Dkt. No. 238). Defendant's challenges include that: the rates charged are too high; some of the entries are too general; the number of hours claimed is too high; mediation costs should be excluded; expert witness fees are too high; witness fees should be excluded; the filing fee should be excluded because the case was originally filed on behalf of Bedell; 5 V.I.C. § 541 excludes some of the costs

---

[3] Plaintiff had voluntarily dismissed her claim for Slander of Title Claim on the eve of trial. (Dkt. No. 209 at 2).

included in Plaintiff's Motion; paralegals were underutilized; and the billing encompasses work performed for Bedell and claims upon which Plaintiff was not a "prevailing party." *Id.* at 4, 6-11; (Dkt. No. 238-1 at 1-3, 5-7). The crux of Defendant's "prevailing party" argument is that the judgment limits Plaintiff's recovery to attorneys' fees associated with her reasonable accommodation claim. (Dkt. No. 238 at 6-7).

## II.   APPLICABLE LEGAL PRINCIPLES

### A.  Scope of Attorneys' Fees

Section 3613(c)(2) of the FHA provides that a district court may "in its discretion," award a "prevailing party" attorneys' fees and costs that are "reasonable." 42 U.S.C. § 3613(c)(2). A prevailing party seeking attorneys' fees bears the burden of establishing that her requested fees are reasonable. *Rode*, 892 F.2d at 1183.

In the first instance, the petitioner must "submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). District courts then evaluate reasonableness using the familiar lodestar method: multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Id.* at 433.

The fee applicant bears the burden "to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Carey v. City of Wilkes-Barre*, 496 F. App'x 234, 236 (3d Cir. 2012) (quoting *Blum*, 465 U.S. at 895 n.11). This inquiry begins with the firm's normal billing rate "because, in most cases, billing rates reflect market rates, and they provide an efficient and fair short cut for determining the market rate." *Gulfstream III Assoc., Inc. v. Gulfstream Aerospace Corp.,* 995 F.2d 414, 422 (3d Cir. 1993); *see also Public Interest Group v. Windall,* 51 F.3d 1179, 1185 (3d Cir.

6

1995) ("The starting point in determining a reasonable hourly rate is the attorneys' usual billing rate, but this is not dispositive."); *see e.g.*, *Equivest St. Thomas, Inc. v. Gov't of Virgin Islands*, 2004 WL 3037953, at *8 (D.V.I. Dec. 31, 2004). "In order to determine what constitutes comparable work, courts have looked at the prevailing rates charged in the community for similar work, the availability of adequate local counsel, customary billing rates, the experience of the attorney, and the complexity of the work." § 2675.2 Particular Items of Cost—Attorney's Fees: The Lodestar Approach, 10 Fed. Prac. & Proc. Civ. § 2675.2 (3d ed.). With regard to the complexity of the work, the Third Circuit has deemed it unreasonable for counsel to bill at maximum rates for tasks "effectively performed by administrative assistants, paralegals, or secretaries." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001).

Likewise, petitioner must document the number of hours her attorneys expended on the matter "with sufficient specificity to allow the district court to determine whether the hours claimed are unreasonable for the work performed." *Evans v. Port Auth. of New York and New Jersey*, 273 F.3d 346, 361 (3d Cir. 2001); *see also Hensley*, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."); *Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (hours that are "excessive, redundant, or otherwise unnecessary" are unreasonable).

Ultimately, district courts should not "become green eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838, (2011). Rather "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Id.*

## B. Costs

Section 3613(c)(2) specifically provides for the recovery of "reasonable" costs. 42 U.S.C. § 3613(c)(2).[4]  Courts interpreting statutory costs provisions—like Section 3613(c)(2)—have generally limited recovery to those "expenses that are incurred in order for the attorney to render his or her legal services and that would normally be charged to a fee-paying client." *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F. Supp. 1017, 1023 (N.D. Ohio 1997) (citing *Abrams v. Lightolier,* 50 F.3d 1204, 1225 (3d Cir. 1995)).  Reasonable expenses may be allowed, even where they exceed taxable costs. *Id.* (citing *Harris v. Marhoefer,* 24 F.3d 16, 20 (9th Cir.1994)). Routine expenses typically incorporated into fee rates as part of overhead are not recoverable. *Id.* (citing *Abrams,* 50 F.3d at 1225).  Like a petition for fees, a request for costs must be sufficiently detailed and specific that the Court may evaluate the reasonableness of the items included. *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 181 (3d Cir. 2001) (One-page statement without "supporting data explaining the relevant purpose of the expenditures" insufficient to support request for costs.).

---

[4] Defendant argues in his Opposition that under the "statute" the Court has discretion to forego awarding costs due to Defendant's financial circumstances. (Dkt. No. 240 at 14).  The cases on which Defendant relies, however, interpret awards under 5 V.I.C. § 541 and Federal Rule of Civil Procedure 54, and not the applicable statute here–42 U.S.C. § 3613(c)(2). Section 3613(c)(2)'s language "differs" from other fee shifting statutes in that it applies the "same analysis" to costs as attorneys' fees. *Cleveland v. Ibrahim*, 121 Fed. Appx. 88, 91-92, n.1 (6th Cir. 2005).  "[W]hile the district court generally has discretion in determining whether to award attorney's fees [and costs], once it is determined that no 'special circumstances' exist, this discretion is strictly cabined in civil rights cases." *Id.* (citing *N.J. Coalition of Rooming and Boarding House Owners v. Mayor and Counsel of the City of Asbury Park*, 152 F.3d 217, 225 (3d Cir. 1998)).  Under Section 3613(c)(2), the "losing party's ability to pay is not a special circumstance." *Id.* (citing *Inmates of Allegheny County Jail v. Pierce*, 716 F.2d 177, 180 (3d Cir. 1983).

### III.    DISCUSSION

#### A.    Attorneys' Fees

For Section 3613(c)(2) cases, "[a] party is a prevailing party if [s]he succeeded on any significant issue in the litigation and [has] obtained some of the relief [she] sought as long as the relief obtained provides at least some relief on the merits and consists of a judicially sanctioned change in the legal relationship of the parties." *Kromenhoek v. Cowpet Bay W. Condo. Ass'n*, 2015 U.S. Dist. LEXIS 201406, at *7-8 (D.V.I. July 15, 2015) (internal quotation omitted); *see also Buckhannon*, 532 U.S. 598 at 604 (2001) (citing with approval cases upholding award of fees based on a judicially sanctioned change in the legal relationship between the parties); *Blanchard*, 489 U.S. 87 at 96 (1989) ("Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms.") (internal quotation omitted).

Under this standard, Nelson is certainly a prevailing party who is entitled to an award of attorneys' fees and costs. Nelson received a judgment in her favor on her FHA reasonable accommodation claim and was awarded $12,000 in compensatory damages and $45,000 in punitive damages. (Dkt. No. 232 at 2). Such a judgment is more than sufficient to qualify Nelson as a prevailing party under Section 3613(c)(2). *See, e.g., Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1291 (11th Cir. 2014) ($5,000 compensatory damages award sufficient for award of attorney's fees); *Cabrera v. Jakabovitz*, 24 F.3d 372, 393 (2d Cir. 1994) (overruled on other grounds by *Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581, 613 (2d Cir. 2016)) (awarding attorney's fees where plaintiff was awarded one dollar in nominal damages, but prevailed on a significant legal issue with a "public purpose").

Further and contrary to Defendant's assertion (Dkt. No. 238 at 6-7), Nelson's award is not limited to the hours spent on her reasonable accommodation claim. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."). Indeed, the fact that Nelson did not succeed on every claim does not alter or limit Nelson's right to recover attorneys' fees in this case. *Id.* ("In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.").

Plaintiff's counsel submitted billing documentation for their work in this matter. (Dkt. Nos. 233-2, 233-3, 233-4, 233-5). The Court will apply the lodestar method, making adjustments to counsel's hourly billing rate and time expended where the billing rate and/or time expended are not deemed to be reasonable. *Blum,* 465 U.S. at 888.

### 1.    Reasonableness of Hourly Rate

Fee applicants bear the burden "to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id*. In support of Nelson's Fee Petition, she submits the Affirmation of her attorney, Sunshine S. Benoit, Esq., and a document styled as "invoice" listing charges for the work performed by Barnes & Benoit LLP. Nelson argues that her attorney's work should be compensated at rates of $150 per hour for paralegal services, $275 per hour for associate work,

and $300 per hour for partner work[5] performed prior to January 1, 2013; and $325 per hour for associate work and $350 per hour for partner work performed after January 1, 2013.

This Court has found that Virgin Islands courts "have generally concluded that a reasonable hourly rate in this jurisdiction spans from $125 to $300 per hour." *Anthony on Behalf of Lewis v. Abbott*, 2012 WL 2752154, at *3 (D.V.I. July 9, 2012) (citing cases); *see Baumann v. Virgin Islands Water & Power Auth.*, No. 13-02, 2016 WL 1703312, at *2 (D.V.I. Apr. 27, 2016) (holding that $300 per hour for a partner, $250 per hour for an associate, and $100 per hour for a paralegal was reasonable). While Plaintiff claims that the Court's decision in *Anthony on Behalf of Lewis* is based on a 2010 analysis that is outdated for Plaintiff's counsel's 2011-2016 work, Plaintiff does not cite any caselaw or other authority supporting the higher rates that she argues are reasonable. Instead, Plaintiff appears to rely on the conclusory statement in counsel's Affirmation that the requested fees are "fair and reasonable" standard rates. (Dkt. No. 233-1 at 3). However, even as recently as 2020, attorneys' fees were awarded in FHA litigation in this District at significantly lower rates than Plaintiff's proposed rates. *See Dorval v. Sapphire Vill. Condo. Owners Ass'n*, 2020 U.S. Dist. LEXIS 85178, at *10-11 (D.V.I. May 14, 2020) (holding that $275 per hour for a partner and $225 per hour for an average associate is reasonable).

---

[5] Defendant argues that the rates submitted of $300 and $325 per hour for Paul Neil, who is referred to in Plaintiff's documentation as a "Law Clerk," is unreasonable. (Dkt. No 238 at 10). Plaintiff's Reply explains that Neil is a partner level attorney admitted to practice law in numerous jurisdictions and had been practicing law for over 16 years, including before the United States Supreme Court. Plaintiff further explains that, despite Neil's extensive experience, he was listed as a "Law Clerk" because he had not formally been sworn into the Virgin Islands Bar at the time the work was performed. (Dkt. No. 240 at 9-10). Despite filing a Sur-reply, Defendant does not address Mr. Neil's qualifications. Given Mr. Neil's qualifications and admissions, the Court does not find it unreasonable that Plaintiff's counsel's rate for Mr. Neil was commensurate to the rates it charged for its other lawyers. The Court will therefore treat Mr. Neil's rate as it does the rates for Plaintiff's other counsel.

To justify Plaintiff's partner rates above $300 per hour, Plaintiff makes several arguments. First, Plaintiff asserts that "all of the attorney rates listed in the supporting documentation . . . are at or below the rates those attorneys charged . . . to clients of the firm at the times represented." (Dkt. No. 240 at 8). This, however, is "not dispositive." *Public Interest Group v. Windall,* 51 F.3d 1179, 1185 (3d Cir. 1995). It is only the starting point of the analysis. *Gulfstream III Assoc., Inc. v. Gulfstream Aerospace Corp.,* 995 F.2d 414, 422 (3d Cir.1993) (noting that counsel's standard billing rate is merely the starting point of the analysis).

Second, Plaintiff argues that the "rates requested in this matter were below the rate of $375 per hour charged for a termination of the contingency agreement" in this case. (Dkt. No. 240 at 8). The Court, however, does not credit Plaintiff's counsel's citation to the $375 per hour rate in the termination clause of the Contingency Fee Agreement because it appears to list a higher rate than Plaintiff's counsel's standard hourly rate.[6]  (Dkt. No. 240-8 at 3).

Third, Plaintiff argues that the law does not cap reasonable attorneys' fees and that some local attorneys charge even higher rates than Plaintiff's counsel.  *See* (Dkt. No. 240 at 8) (citing examples between $325-$1,075 an hour).[7] While Plaintiff is correct that the law does not establish a cap *per se* on hourly rates, the law requires that the "rates are in line with those prevailing in the

---

[6] The termination clause in the Contingency Fee Agreement states: "[y]our termination of our services will not affect your responsibility for payment of legal services rendered at our normal hourly rate of $375 an hour[.]" However, in her Affirmation, Attorney Sunshine Benoit states that the "firm's original standard hourly rate" at the time the contingency agreement was signed was between $275-300 per hour. (Dkt. No. 233-1 at ¶4). Therefore, the Court will not credit Plaintiff's citation to the $375 per hour rate in the termination clause of the Contingency Fee Agreement—which contradicts Benoit's Affirmation—as supporting an appropriate hourly rate here.

[7] The Court finds Plaintiff's comparisons to rates charged in a RICO case and the HOVENSA bankruptcy inapposite to the appropriate rates for an FHA reasonable accommodation claim. (Dkt. Nos. 240-3, 240-4, 240-5, 240-6, 240-7).

community for similar services." *Carey v. City of Wilkes-Barre*, 496 F. App'x 234, 236 (3d Cir. 2012). Plaintiff does not cite any caselaw holding that the rates she seeks, or the higher rates that certain other attorneys generally charge, are reasonable for an attorneys' fee award in this matter involving an FHA reasonable accommodation claim.  To the contrary, the case on which Plaintiff relies, *Pack v. Fort Wash. II*, approved a rate of only $167.98 per hour. 2010 U.S. Dist. LEXIS 23015, at *7 (E.D. Cal. Feb. 22, 2010).

Finally, Plaintiff argues that the complex and unique nature of this FHA reasonable accommodation matter warrants higher attorneys' fees. In support of this argument, Plaintiff principally claims that the case presented a unique question in that there "were no opinions in the Virgin Islands dealing with the standard for emotional support animals and reasonable accommodations." (Dkt. No. 240 at 8).  Given that Plaintiff's reasonable accommodation claim was a federal FHA claim, the Court is unpersuaded by Plaintiff's argument that the case presented a unique question warranting higher billing rates. Indeed, the Court's Judgment cites to a plethora of federal caselaw predating the filing of this action and laying out the relevant legal standards.

In short, Plaintiff has failed to advance any substantive justification for rates of $150 per hour for its paralegals and between $275-$325 per hour for its associates.  Given  that  Plaintiff has not met her burden of showing that the requested rates are reasonable under the circumstances here, the Court may "affix an adjusted rate." *Carey*, 496 F. App'x at 237 (quoting *Loughner*, 260 F.3d at 180).  In accordance with the caselaw of this jurisdiction, the Court sets a reasonable hourly rate of $100 for paralegal work, $250 for associate work and $300 for partner work.

### 2.    Reasonableness of Time Expended

Nelson's Fee Petition seeks fees for 796 hours of work performed between April 1, 2011 and August 8, 2016.  The Supreme Court instructs district courts not to become accountants or

allow fee shifting to become a major aspect of litigation. *Fox v. Vice*, 563 U.S. 826, 838 (2011). As such, district courts are given substantial deference to apply their "overall sense of the suit" and to "use estimates" to achieve "rough justice." *Id.*   Here, Plaintiff's counsel represented two clients—one prevailing party and one who cannot recover attorneys' fees; used, without explanation, a large team of attorneys to handle an FHA litigation; and sparingly used paralegals to defray costs. The Court finds that each of these factors suggest that 796 hours were not reasonable for this litigation. Based on the Court's "overall sense of the suit," the Court will apply a 50% reduction to hours worked—excluding paralegal time—to address these three issues in arriving at Plaintiff's fee award. *Id.*

### a) Work Done on Behalf of Both Nelson and Bedell

Plaintiff's counsel represented two Plaintiffs, Nelson and Bedell, for much of the time spent on this matter. Nelson was a prevailing party and is entitled to an award of attorneys' fees; Bedell was not a prevailing party and therefore is not entitled to attorneys' fees. In recognition of this issue, Plaintiff states that the submitted documentation "represent[s] work done on behalf of Ms. Nelson and does not include time *where it could be separated* from that of work on behalf of her now deceased co-Plaintiff Anne-Marie Bedell." (Dkt. No. 233 at 3) (noting that work done solely on behalf of Ms. Bedell was not included) (emphasis added); *see also* (Dkt. No 240 at 7) ("Additionally, *to the extent possible*, counsel for Ms. Nelson excluded in its Motion, fees that were solely attributable to Ms. Bedell . . . no feasible means exists of further carving out time spent litigating for one Plaintiff versus the other.") (emphasis added).

Defendant argues that Plaintiff's counsel's representation that the documentation excluded work done exclusively for Bedell is inaccurate. Defendant maintains that the time billed included work done prior to Nelson joining the lawsuit. Plaintiff responds that Nelson was present at a billed

meeting and that research done prior to Nelson formally having joined the lawsuit was done on her behalf. (Dkt. 240 at 7 n.3).[8] Defendant further argues that many entries are for time spent working at least in part for Bedell.

While the Court appreciates that Defendant excluded time spent working exclusively for Bedell where those time entries were readily identifiable from the billing records, and that it is natural that some tasks will overlap where two clients advance the same or similar claims against the same defendant, the Court must still adjust Plaintiff's requested hours to reflect the fact that Plaintiff's counsel was simultaneously representing a second non-prevailing party prior to trial. *Boatman v. Elijah Muhammad*, 2023 U.S. Dist. LEXIS 120455, at *39 (N.D. Ill. July 13, 2023) (Recognizing that "[s]urely representing two clients generated more fees than representing one client" and reducing attorneys' fees award for the first client to 75% of time spent on both clients' overlapping claims); *Wallace v. Full Spectrum Lending, Inc.*, 2006 U.S. Dist. LEXIS 88582, at *18 (C.D. Cal. Nov. 28, 2006) (holding that counsel "cannot receive compensation for all his time spent on this case when only one plaintiff has resolved his claim" and reducing the fee award to 75% of the hours reasonably expended); *Seamands v. Sears Holding Corp.*, 2011 U.S. Dist. LEXIS 24741, at *37-39 (D. Kan. Mar. 11, 2011) ("the total fee award properly includes only that time spent with respect to one plaintiff."). Moreover, it is Plaintiff's burden to separate the hours spent on Nelson and the hours spent on Bedell. *Wallace*, 2006 U.S. Dist. LEXIS 88582 at *18. Counsel's decision to bill hours for both clients under a single matter number and use block billing therein has contributed to the issue Plaintiff faces in recovering the attorneys' fees it now claims.

---

[8] The Court notes that it appears that Nelson had signed her representation agreement prior to joining the lawsuit, but that in some instances Plaintiff's counsel's billing records are ambiguous as to for whom the work was done prior to Nelson joining the lawsuit. *See e.g.*, (Dkt. No. 233-2 at 2) (listing a time entry for June 13, 2011 with the description "draft correspondence to Long Reef regarding reasonable accommodation").

*Id.* (Plaintiff's "billing statement does not separate the hours spent on Sosa's claim from the time spent on Wallace's claim or the class action separately, a burden that falls to plaintiff as the party seeking fees for only part of counsel's total efforts in the case"). Accordingly, the Court—like other district courts—will reduce the hours in Plaintiff's fee award as a result of the presence of a second client for a portion of the lawsuit.[9]

### b) Excessive and Duplicative Billing

Defendant argues that Plaintiff's use of an extensive legal team has created excessive and often duplicative bills. (Dkt. No. 233 at 10-11). The Court agrees.

While Plaintiff argues that individual examples of what Defendant deems excessive billing were appropriate time entries, Plaintiff offers no explanation as to why a team of eight attorneys[10] billing at rates near or above the higher spectrum of reasonable rates for this jurisdiction was required for this matter, wherein Plaintiff sought $12,000 in compensatory damages in a bench trial. (Dkt. No. 240 at 10-12). Such an explanation is particularly necessary here where, notwithstanding that there were two plaintiffs for a portion of the case, Plaintiff acknowledges that "the research, briefing, evidence, and work performed as to both of those Plaintiffs [were] the same," and that "Plaintiffs even mediated the case together." (Dkt. No 240 at 7).

"Compensation for . . . the services of more than one attorney is only proper if there is no unreasonable duplication of effort." *Morris v. I.C. Sys.*, 2009 U.S. Dist. LEXIS 41293, at *9-12 (E.D. Pa. May 15, 2009) ("Mailman explains in his declaration that at his firm on some cases, for

---

[9] Plaintiff Nelson did not formally join this matter until after the Complaint had been filed. Plaintiff Bedell passed away prior to trial and was therefore not a party during the trial.

[10] "[C]ourts should bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Hines v. 1025 Fifth Ave. Inc.*, 2015 U.S. Dist. LEXIS 84946, at *9 (S.D.N.Y. June 30, 2015). Plaintiff offers no explanation as to why such a large legal team was required to litigate this case.

the purpose of efficiency, different attorneys handle different functions but that these functions do not overlap . . . This process can hardly be seen as efficient and involved unreasonable duplication of effort."). Here, duplication of effort is evident in the billing records. Indeed, in responding to Defendant's claim of excessive billing, Plaintiff concedes that having a large team required "conferences [that] are a normal part of litigating moderate to large trials." *Id.* at 10-11. While the Court does not dispute the importance of Plaintiff pursuing her FHA claim, Plaintiff offers no explanation as to why the resources needed to conduct a moderate to large jury trial were necessary for this case. The billing documentation further reflects that some redundancy undoubtedly resulted in this case from the size and division of labor within the legal team.  For example, the attorney drafting the complaint was not the same attorney working on the motion to dismiss; the attorney taking the expert deposition was not the same attorney preparing the *Daubert* motion; the attorney preparing the proposed findings of facts and conclusions of law (who also billed as a second attorney attending trial) was not the same attorney working on the post-trial proposed findings of facts and conclusions of law. Further, as Defendant points out in its Response, Plaintiff's Motion claims only nine hours of paralegal work out of 796 hours billed. This nine hours of paralegal work stands in sharp contrast to the 305 hours of partner time and 482 hours of associate time. (Dkt. No. 238-1 at 1). The Court's review of Plaintiff's fee submission confirms that attorneys billed for time spent doing work that appears could have been done by non-lawyer staff, including several billings associated with obtaining a trial transcript (Dkt. No. 233-4 at 15) and a client phone call to get pharmacy information (Dkt. No. 233-3 at 15). While the law firm is free to structure its legal team as it chooses, it does not necessarily follow that all attorneys' fees incurred will be deemed reasonably expended.

It is further elucidating that a dispute arose during this briefing as to whether the steps Attorney Benoit took to familiarize herself with the case were proper. As Defendant points out, when Attorney Benoit joined the legal team, there was nearly two-thousand dollars billed to have Attorney Benoit review the file "as new." (Dkt. No. 33 at 12-13). Plaintiff concedes that when it was determined that "counsel who brought the case would not be able to continue working on the matter," it was then necessary for Attorney Benoit to familiarize herself with the case by reviewing the case files, meeting with team members, and researching issues. While the Court agrees that such steps were undoubtedly necessary and proper for a new attorney joining the team, the Court disagrees that Defendant should be required to pay for attorney turnover on this matter. *Jada H. v. Rivera*, 2019 U.S. Dist. LEXIS 94679, at *9-10 (E.D. Pa. June 6, 2019)  ("I also reduce 11.1 hours of Golembiewski's time because these hours are either related to attorney turnover, or, like the many hours spent drafting, revising, and responding to the motion for summary judgment, would have been greatly reduced if a new attorney had not been required to relearn the factual, procedural, and legal history of the case."); *Advanced Medical, Inc. v. Arden Medical Systems, Inc.*, 1990 U.S. Dist. LEXIS 3573, at *16-17 (E.D. Pa. Mar. 29, 1990) ("Time spent on training a new attorney on a case is not the kind of expense which would reasonably be expected to be billed to a client").

Accordingly, the Court finds that it is appropriate to reduce the attorneys' fees sought to account for the excessive and duplicative billing inherent in the staffing of this case.

### 3.   Lodestar Application

As discussed above, and in accordance with the caselaw of this jurisdiction, the Court sets the reasonable hourly rate for work performed in this matter at $100 for paralegal work, $250 for associate work, and $300 for partner work.

Plaintiff's fees request seeks a total of 796 hours, including 9 hours of paralegal time, 482 hours of associate time and 305 hours of partner time. The Court determined that a 50% reduction in the hours expended—excluding paralegal time—is appropriate to address billing for work done on behalf of both Nelson and Bedell, and the billing redundancies and division of labor resulting from the staffing of this matter. As such, Plaintiff is entitled to attorneys' fees for a total of 9 hours of paralegal time, 241 hours of associate time, and 152.5 hours of partner time. At the rates set by the Court, this results in an attorneys' fees award of $106,900 as calculated below.

| Name | Position | Hours | Reduced Hours | Reasonable Rate | Total |
|------|----------|-------|---------------|-----------------|-------|
| **Partner Time** | | | | | |
| Carl A. Beckstedt | Partner | (7.4) | 3.7 | $300 | $1,110 |
| Daryl C. Barnes | Partner | (12.6) | 6.3 | $300 | $1,890 |
| Linda J. Blair | Partner | (1.6) | .8 | $300 | $240 |
| Britain H. Bryant | Partner | (91.90) | 45.95 | $300 | $13,785 |
| Paul R. Neil | "Law Clerk" | (45.7) | 22.85 | $300 | $6,855 |
| Sunshine S. Benoit | Partner | (145.8) | 72.9 | $300 | $21,870 |
| | | (305) | 152.5 | $300 | $45,750 |
| **Associate Time** | | | | | |
| Sunshine S. Benoit | Associate | (312) | 156 | $250 | $39,000 |
| Emily A. Shoup | Associate | (42.3) | 21.15 | $250 | $5,287.5 |
| John J. Merchant | Associate | (127.70) | 63.85 | $250 | $15,962.5 |
| | | (482) | 241 | $250 | $60,250 |
| **Paralegal Time** | | | | | |
| Paralegals | Paralegals | (9) | 9 | $100 | |
| | | | 9 | $100 | $900 |
| | | | | | |

| | | | Total | | |
|---|---|---|---|---|---|
| | | | 402.5 | $100-300 | $106,900 |

**B.      Costs**

Title 42 U.S.C. § 3613(c)(2) specifically provides for the recovery of "reasonable" costs.

42 U.S.C. § 3613(c)(2). There is not a specific statutory list of reasonable costs for Section

3613(c)(2) and the Court has discretion to determine allowable costs. Plaintiff submitted

$9,086.17 in costs.[11] Plaintiff's costs include certain costs applicable to both Bedell and Nelson,

such as mediation costs ($1,804.50), mediation fees ($208.72), the filing fee for the Complaint

($350), and the costs of certain deposition transcripts ($2,412.05).

The Court will not allow the recovery of mediation costs and fees.[12] The Court finds that

the policy rationale for excluding mediation costs from recoverable costs—promoting good faith

in mediation—is applicable here. Thus, while mediation costs and fees are not statutorily precluded

under 3613(c)(2), the Court, in its discretion, will not award mediation costs. *See Santiago v.*

*William G. Roe & Sons, Inc*., 2010 U.S. Dist. LEXIS 75935, at *1 (M.D. Fla. July 27, 2010)

("[E]ven if taxable as a matter of discretion, a court generally does not tax mediation expenses,

because those expenses should be shared equally by the parties to promote good

faith mediation without financial concerns for the costs of resolving a case."). Given that

Plaintiff's counsel was simultaneously representing Nelson and Bedell, the Court will permit

---

[11] Attorney Benoit's Affirmation lists the submitted costs as the Filing Fee for the Complaint ($350.00), Deposition Transcript Fees ($2,412.05), Medical Records ($44.00), Subpoena and Testimony Fees for Trial ($3,435.00), Mediation Costs ($1,804.50), Mediation Fees ($208.72), and Copies of Trial Transcripts ($831.90).

[12] In contrast to the mediation costs and fees, billable hours in connection with mediation, as Plaintiff argues, are more interrelated to the merits of the underlying litigation. Thus, while the Court will not allow mediation costs and fees, it will allow attorneys' fees related to the mediation.

Plaintiff to recover only 75% of the other shared costs of $2762.05 for the deposition transcript fees and the fee for filing the Complaint—or $2,071.54.[13] The Court finds that the remainder of Plaintiff's requested costs[14] in the amount $4,310.9—for subpoena and testimony fees for trial, medical records, and copies of trial transcripts—are reasonable. As such, the Court will allow a total of $6,382.44 in Costs.

### C.   Attorneys' Fees for Time Spent on Fee Application

Attorneys may be compensated for a reasonable amount of time spent preparing fee petitions. *Giddings v. Brown & Brown Gen. Contrs., Inc.,* 2020 U.S. Dist. LEXIS 188959, at *6 (E.D. Pa. Oct. 13, 2020); *Rivera v. Inc. Vill. of Farmingdale*, 2016 U.S. Dist. LEXIS 16526, at *28 (E.D.N.Y. Jan. 21, 2016) (applying Section 3613(c)(2) and holding that "[a]n application for fees for time spent litigating a fee petition is evaluated no differently from the costs of litigating the underlying case") (internal quotation and citation omitted). Plaintiff seeks an additional 28.2 hours of partner and of counsel time and zero hours of associate or paralegal time spent on its Fee Petition. Once again, in light of the staffing choices made by Plaintiff's counsel without justification for the use of multiple senior attorneys for tasks that seemingly could be accomplished by a combination of counsel that includes less senior staff, the Court will reduce the hours submitted to 75% of the 28.2 hours spent on Plaintiff's Fee Petition, resulting in 21.15 hours. Using

---

[13] Plaintiff does not clearly demonstrate whether the costs for specific transcripts were incurred exclusively for Nelson or jointly for Nelson and Bedell. Further, while Nelson was not a party to the case at the time of the filing of the Complaint, a filing fee is a necessary cost in litigation. The Court will therefore treat these costs as costs necessary to pursue litigation on behalf of both clients and therefore award 75% of those costs.  *See Boatman v. Elijah Muhammad*, 2023 U.S. Dist. LEXIS 120455, at *39 (N.D. Ill. July 13, 2023).

[14] The Parties appear to dispute whether Plaintiff is seeking costs for "meal during trial prep and trial," which is listed on Plaintiff's invoice, but purportedly not included in Plaintiff's block billed summary of costs in the Benoit Affirmation. For the avoidance of doubt, the Court does not award costs for meals, which Plaintiff denies it is seeking.

the rates the Court found reasonable for the underlying litigation, the Court will award Plaintiff $6,345.00 in attorneys' fees for work done on Plaintiff's Fee Petition.

### IV.    CONCLUSION

In view of the foregoing, the Court will grant in part Plaintiff/Counter-Defendant Sandra Nelson's Motion for Fees and Costs (Dkt. No. 233) and award Plaintiff $106,900 in attorneys' fees for time spent on the underlying litigation, $6,345.00 in additional attorneys' fees for work done on Plaintiff's Fee Petition, and $6,382.44 for costs, for a total of $119,627.44.

An appropriate Order accompanies this memorandum opinion.

Date: January 29, 2024                                    _____/s/_____
                                                          WILMA A. LEWIS
                                                          District Judge